Nos. 01-420, 01-441 and 01-442

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 203

ALEXIS RAUSCH, as Conservator for KEVIN RAUSCH,
and on behalf of others similarly situated,

CHARLES FISCH, individually and on behalf of
others similarly situated,

THOMAS FROST, individually and on behalf of
others similarly situated,

   Plaintiffs/Appellants,

 v.

STATE COMPENSATION INSURANCE FUND,

   Defendant/Respondent.

APPEAL FROM:  Workers' Compensation Court, State of Montana
       The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

   For Appellants:

      Lon J. Dale, James T. Towe, Milodragovich, Dale, Steinbrenner & Binney,
      P.C., Missoula, Montana (For Rausch)

      Monte D. Beck, Attorney at Law, Bozeman, Montana (For Fisch)

      Stephen D. Roberts, Attorney at Law, Bozeman, Montana (For Frost)

   For Respondent:

      Greg E. Overturf, Montana State Fund, Helena, Montana

Submitted on Briefs: December 13, 2001

Decided:  September 5, 2002

FILED

SEP 05 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA
Filed:

_____
        Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Appellants, Alexis Rausch (as conservator for Kevin Rausch), Charles Fisch, and Thomas Frost, each filed separate petitions in Workers' Compensation Court claiming entitlement to immediate payment of an impairment award based on their respective impairment ratings. Respondent, State Compensation Insurance Fund, denied immediate payment of the impairment awards, asserting that the benefit was not due until each claimant reached his retirement age. Appellants brought their claims as individuals and on behalf of others similarly situated, and also sought attorney fees, penalties, and common fund attorney fees. The Workers' Compensation Court consolidated the three cases and concluded that neither the 1991 nor 1997 Montana Workers' Compensation Acts (which applied to these claimants) provided a statutory basis for an impairment award to permanently totally disabled claimants. Claimants contended that if that conclusion was correct, their rights to equal protection and due process were violated. The Workers' Compensation Court held that the Montana Workers' Compensation Act, as interpreted by the Court in its previous order, did not violate either the equal protection or due process clauses of the Montana Constitution. Appellants appeal from the Workers' Compensation Court's Order and Decision Disposing of Non-Constitutional Issues, Order and Judgment Regarding Constitutional Challenge, and the Judgment Respecting Impairment Awards. We reverse the Workers' Compensation Court's orders which denied impairment awards to permanently totally disabled workers and denied attorney fees.

¶2 The issues presented on appeal are restated as follows:

2

¶3     1.  Did the District Court err as a matter of law when it concluded, pursuant to the 1991 and 1997 versions of the Montana Workers' Compensation Act, that permanently totally disabled workers are not entitled to receive impairment awards?

¶4     2.  Is an impairment award due to a permanently totally disabled claimant upon the receipt of his or her undisputed impairment rating or upon retirement?

¶5     3.  Should an impairment award to a permanently totally disabled claimant be characterized as a total or partial disability benefit?

¶6     4. Are claimants' attorneys entitled to attorney fees pursuant to the common fund doctrine?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7     Kevin Rausch, Charles Fisch, and Thomas Frost were all determined to be permanently totally disabled as a result of work-related injuries.  Kevin Rausch sustained a head and spinal cord injury on July 8, 1992, and is quadriplegic with brain damage.  Charles Fisch sustained a spinal cord injury on July 9, 1998, and is an incomplete quadriplegic. Thomas Frost sustained a back injury on August 30, 1997, and has undergone a series of four back surgeries. The State Compensation Insurance Fund (State Fund) insured each claimant's employer and has accepted liability for each of the injuries.

¶8     Rausch, Fisch, and Frost currently receive permanent total disability benefits as a result of their work-related injuries, and are entitled to those benefits until their death or retirement age, whichever occurs first.  The claimants began receiving permanent total

3

disability benefits immediately upon termination of their temporary total disability benefits. None of the claimants have ever received permanent partial disability benefits.

¶9 Each claimant has reached maximum medical improvement from his respective injuries. On December 14, 1998, Kevin Rausch received an impairment rating equal to 96% of the whole person. On July 29, 1999, Charles Fisch received an impairment rating equal to 74% of the whole person and on August 26, 1999, Thomas Frost received an impairment rating equal to 25% of the whole person. Each impairment rating was based on the American Medical Association Guide to Evaluation of Permanent Impairment, and on objective medical findings.

¶10 Each claimant filed separate petitions in the Workers' Compensation Court claiming entitlement to immediate payment of an impairment award. The State Fund denied immediate payment of the impairment awards, based on its contention that impairment awards for permanently totally disabled claimants are not due until the claimants either receive social security retirement benefits or are entitled to receive social security retirement benefits. Claimants also asserted that postponement of their impairment awards would violate their rights to equal protection and substantive due process as guaranteed by the Montana Constitution. Claimants sought attorney fees individually and pursuant to the common fund doctrine for similarly situated claimants. At no time did the State Fund contend that claimants had no entitlement to an impairment award. The dispute centered on the timing of the payment.

¶11 On March 29, 2000, the State Fund offered to pay the impairment awards, as an undiscounted, lump sum, to each claimant concurrent with permanent total disability benefits. In addition, the State Fund agreed to pay the claimants' attorney fees. Fisch and Frost accepted the State Fund's offer, but continued to maintain standing for class certification and for common fund attorney fees. Rausch rejected the State Fund's offer because of its unwillingness to characterize the impairment award as a permanent total disability benefit (which would impact whether there is a social security offset). Although the State Fund has paid impairment awards to Fisch and Frost, it has not paid impairment awards to all other similarly situated claimants.

¶12 The Workers' Compensation Court consolidated the three cases, and bifurcated the statutory and constitutional issues. It first examined the statutory basis for impairment awards, and then examined the constitutionality of its decision in light of the claimants' constitutional arguments. Based on briefs and stipulated facts, the Workers' Compensation Court issued an Order and Decision Disposing of Non-Constitutional Issues on September 13, 2000. It held that neither the 1991 nor 1997 Montana Workers' Compensation Acts provided for impairment awards to permanently totally disabled claimants. The Workers' Compensation Court then issued an Order and Judgment Regarding Constitutional Challenge on April 20, 2001. In that Order, it held that the Court's interpretation of the Montana Workers' Compensation Act did not violate either the due process or equal protection clauses of the Montana Constitution.

5

¶13 The claimants appealed the Workers' Compensation Court's Order and Decision Disposing of Non-Constitutional Issues, Order and Judgment Regarding Constitutional Challenge, and the Court's Judgment Respecting Impairment Awards which was based on those orders.

## STANDARD OF REVIEW

¶14 We review the Workers' Compensation Court's conclusions of law to determine whether they are correct. *Matthews v. State Compensation Ins. Fund*, 1999 MT 225, ¶ 5, 296 Mont. 76, ¶ 5, 985 P.2d 741, ¶ 5.

## DISCUSSION

## ISSUE 1

¶15 Did the District Court err as a matter of law when it concluded, pursuant to the 1991 and 1997 versions of the Montana Workers' Compensation Act, that permanently totally disabled workers are not entitled to receive impairment awards?

¶16 The contested legal issue presented to the Workers' Compensation Court by the parties related to when an impairment award should be paid to a permanently totally disabled claimant. The claimants asserted that the impairment award should be paid immediately upon receipt of their undisputed impairment ratings, while the State Fund responded that the impairment award should be paid at age 65, upon retirement, pursuant to § 39-71-710, MCA (1991 & 1997). The State Fund had already conceded that the claimants were entitled to impairment awards. However, in analyzing the legal issue presented, the Workers' Compensation Court concluded there was no statutory basis for impairment awards to

6

permanently totally disabled claimants in either the 1991 or 1997 versions of the Montana Workers' Compensation Act. On that basis, the Workers' Compensation Court concluded as a matter of law that permanently totally disabled workers are not entitled to impairment awards. After review of the applicable statutes, we conclude that the Workers' Compensation Court's interpretation of the acts is incorrect.

¶17    Workers' compensation benefits are determined by the statutes in effect on the date of the injury. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Therefore, with respect to the Rausch claim, the 1991 Workers' Compensation Act is applicable. With respect to the Fisch and Frost claims, the 1997 Workers' Compensation Act is applicable.

¶18    Montana recognizes four distinct classes of disability benefits: (1) temporary total; (2) temporary partial; (3) permanent partial; and (4) permanent total. § 39-71-116, MCA (1991 & 1997); *Reeverts v. Sears, Roebuck & Co.* (1994), 266 Mont. 509, 517, 881 P.2d 620, 625. The claimants in this case have all been classified as permanently totally disabled, and have never been classified permanently partially disabled.

¶19    Several sections of the Montana Workers' Compensation Act discuss impairment awards. We have previously stated that where one part of the law deals with a subject in general and comprehensive terms, while another part of it deals in a more specific or definite way, the two parts should be read together and, if possible, harmonized, with a view to giving effect to a consistent legislative policy. § 1-2-101, MCA; *E.H. Oftedal and Sons, Inc. v. State*

7

*ex rel. Montana Transp. Com'n*, 2002 MT 1, ¶ 19, 308 Mont. 50, ¶ 19, 40 P.3d 349, ¶ 19;

*Schuman v. Bestrom* (1995), 214 Mont. 410, 415, 693 P.2d 536, 538-39.

¶20    No section of the Workers' Compensation Act explicitly authorizes impairment awards per se.    However, impairment awards are impliedly authorized to any injured worker classified in one of the four distinct classes of disability benefits by two sections of the Act, § 39-71-710, MCA, and § 39-71-737, MCA.   The 1991 and 1997 versions of § 39-71-710, MCA, differed in only minor respects, and provided in relevant part:

> **Termination of benefits upon retirement.**   (1) If a claimant is receiving disability or rehabilitation compensation benefits and the claimant receives social security retirement benefits or is eligible to receive full social security retirement benefits, the claimant is considered to be retired.  When the claimant is considered retired, the liability of the insurer is ended for payment of wage supplement, *permanent total disability*, and rehabilitation compensation benefits.  However, the insurer remains liable for temporary total disability benefits, *any impairment award*, and medical benefits.

§ 39-71-710(1), MCA (1991) (emphasis added).

> **Termination of benefits upon retirement.**   (1) If a claimant is receiving disability or rehabilitation compensation benefits and the claimant receives social security retirement benefits or is eligible to receive or is receiving full social security retirement benefits or retirement benefits from a system that is an alternative to social security retirement, the claimant is considered to be retired.  When the claimant is retired, the liability of the insurer is ended for payment of permanent partial disability benefits other than the impairment award, *payment of permanent total disability benefits*, and payment of rehabilitation compensation benefits.  However, the insurer remains liable for temporary total disability benefits, *any impairment award*, and medical benefits.

§ 39-71-710(1), MCA (1997) (emphasis added).

¶21 Section 39-71-710, MCA (1991 & 1997), specifically states that an insurer remains liable for other benefits, including "any impairment award," upon cessation of permanent total disability benefits. The statute's contemplation of when permanent total disability benefits terminate and when impairment award liability continues recognizes the fundamental nature of the impairment award itself. Impairment awards are based on a worker's impairment rating, which is a purely medical determination of the loss of physical function of the body caused by the injury. § 39-71-711, MCA (1991 & 1997). The impairment rating is the physical component on which the disability is based. Disability benefits compensate the worker for losses related to their inability to work. An impairment award is paid to compensate the worker for the loss of physical function of his or her body, which may have ramifications beyond just the worker's ability to return to work. The difference is subtle, yet important. The inclusion of continued impairment award liability in § 39-71-710, MCA (1991 & 1997), indicates the distinct nature of the impairment award from other types of disability benefits.

¶22 Furthermore, impairment awards are implicitly recognized in § 39-71-737, MCA. Sections 39-71-737, MCA, of the 1991 and 1997 Workers' Compensation Acts provided as follows:

> **Compensation to run consecutively – exceptions.** Compensation shall run consecutively and not concurrently, and payment shall not be made for two classes of disability over the same period except that impairment awards and auxiliary rehabilitation benefits may be paid concurrently *with other classes of benefits*, and wage supplement and partial rehabilitation benefits may be paid concurrently.

9

§ 39-71-737, MCA (1991) (emphasis added).

> **Compensation to run consecutively – exceptions.** Compensation must run consecutively and not concurrently, and payment may not be made for two classes of disability over the same period, except that impairment awards and auxiliary rehabilitation benefits may be paid concurrently *with other classes of benefits.*

§ 39-71-737, MCA (1997) (emphasis added).

¶23 Section 39-71-737, MCA (1991 & 1997), like § 39-71-710, MCA (1991 & 1997), creates an entitlement to an impairment award for disabled workers within more than one class of disability benefits. Since a permanent impairment rating is inconsistent with temporary disability benefits[1], impairment awards must necessarily be recoverable by both permanently partially and permanently totally disabled claimants.

¶24 The Workers' Compensation Court concluded that the only section in the Workers' Compensation Act which directly authorizes impairment awards is § 39-71-703, MCA (1991 & 1997), pertaining to compensation for permanently partially disabled claimants. Because

---

[1] Temporary benefits (including temporary partial and temporary total benefits) are recoverable as a result of losses incurred by a claimant *prior to* maximum healing. *See* § 39-71-116(23), MCA (1991) and § 39-71-116(32) & (34), MCA (1997). By comparison, permanent benefits (including permanent partial and permanent total benefits) are determined *after the worker has reached maximum medical healing. See* § 39-71-116(15) & (16), MCA (1991) and § 39-71-116(23) & (24), MCA (1997). Pursuant to § 39-71-711(1)(a), MCA (1991 & 1997), "[a]n impairment rating is a purely medical determination and must be determined by an impairment evaluator after a claimant has reached maximum healing." § 39-71-711(1)(a), MCA (1991 & 1997). Therefore, if impairment awards are payable concurrently with "other classes of benefits," it has to be permanent partial and permanent total disability benefits.

10

the claimants in this case were never classified permanently partially disabled, the Court held it had no authority to award compensation for permanent impairment.

¶25 However, the Court's conclusion that § 39-71-703, MCA, expressly provided for impairment awards in both the 1991 and 1997 Workers' Compensation Acts is incorrect. Section 39-71-703, MCA, of the 1991 Workers' Compensation Acts provided in relevant part:

> **Compensation for permanent partial disability.** (1) If an injured worker suffers a permanent partial disability and is no longer entitled to temporary total or permanent total disability benefits, the worker is entitled to a permanent partial disability award.
>
> (2) The permanent partial disability award must be arrived at by multiplying the percentage arrived at through the calculation provided in subsection (3) by 350 weeks.
>
> (3) An award granted an injured worker may not exceed a permanent partial disability rating of 100%. The criteria for the rating of disability must be calculated using the medical impairment rating as determined by the latest edition of the American medical association Guides to the Evaluation of Permanent Impairment. The percentage to be used in subsection (2) must be determined by adding the following applicable percentages to the impairment rating:
>
> (a) if the claimant is 30 years of age or younger at the time of the injury, 0%; if the claimant is over 30 years of age but under 56 years of age at the time of injury, 2%; and if the claimant is 56 years of age or older at the time of injury, 3%;
>
> (b) for a worker who has completed less than 9 years of education, 3%; for a worker who has completed 9 through 12 years of education or who has received a graduate equivalency diploma, 2%; for a worker who has completed more than 12 years of education, 0%;
>
> (c) if a worker has no wage loss as a result of the industrial injury, 0%; if a worker has an actual wage loss of $2 or less an hour as a result of the industrial injury, 10%; if a worker has an actual wage loss of more than $2 an hour as a result of the industrial injury, 20%; and
>
> (d) if a worker, at the time of the injury, was performing heavy labor activity and after the injury the worker can perform only light or sedentary labor activity, 20%; if a worker, at the time of injury, was performing heavy

11

labor activity and after the injury the worker can perform only medium labor activity, 15%; if a worker was performing medium labor activity at the time of the injury and after the injury the worker can perform only light or sedentary labor activity, 10%.

. . . .

The same section in the 1997 Act provided:

**Compensation for permanent partial disability.** (1) If an injured worker suffers a permanent partial disability and is no longer entitled to temporary total or permanent total disability benefits, the worker is entitled to permanent partial disability award if that worker:

(a) has an actual wage loss as a result of the injury; and

(b) has a permanent impairment rating that:

(i) is established by objective medical findings; and

(ii) is more than zero as determined by the latest edition of the American medical association Guides to the Evaluation of Permanent Impairment.

(2) When a worker receives an impairment rating as a result of a compensable injury and has no actual wage loss as a result of the injury, *the worker is eligible for an impairment award only.*

(3) The permanent partial disability award must be arrived at by multiplying the percentage arrived at through the calculation provided in subsection (5) by 350 weeks.

(4) A permanent partial disability award granted an injured worker may not exceed a permanent partial disability rating of 100%.

(5) The percentage to be used in subsection (3) must be determined by adding all of the following applicable percentages to the impairment rating:

. . . .

Section 39-71-703, MCA (1997) (emphasis added).

¶26   The 1991 version of § 39-71-703, MCA, did not expressly provide for impairment awards. The statute simply discussed the use of the "impairment rating" as one factor in determining permanent partial disability benefits.

12

¶27 The 1997 version of § 39-71-703, MCA, on the other hand, does specifically provide for impairment awards. However, they are not linked to partial disability. Section 39-71-703(2), MCA (1997), provided that "[w]hen a worker receives an impairment rating as a result of a compensable injury and has no actual wage loss as a result of the injury, the worker is eligible for an impairment award." Pursuant to the definition of "permanent partial disability" found in § 39-71-116(23), MCA (1997), however, if there is no wage loss, there is no permanent partial disability.[2]

¶28 Therefore, neither the 1991 nor 1997 version of § 39-71-703, MCA, are authority for limiting impairment awards to partially disabled claimants. In the 1991 version, they were not expressly provided for. In the 1997 version, they were unrelated to the disability.

¶29 One final consideration is necessarily part of our statutory analysis. To provide an impairment award to permanently partially disabled claimants and not to permanently totally disabled claimants would lead to an absurd result, and contravene the intent underlying the Workers' Compensation Act. When more than one interpretation is possible, in order to promote justice, we will reject an interpretation that leads to an unreasonable result in favor

---

[2] (23) "Permanent partial disability" means a physical condition in which a worker, after reaching maximum medical healing:
 (a) has a permanent impairment established by objective medical findings;
 (b) is able to return to work in some capacity but the permanent impairment impairs the worker's ability to work; and
 (c) *has an actual wage loss as a result of the injury.*

§ 39-71-116(23), MCA (1997) (emphasis added).

of another that will lead to a reasonable result. *Johnson v. Marias River. Elec. Co-op, Inc.* (1984), 211 Mont. 518, 524, 687 P.2d 668, 671. As interpreted by the Workers' Compensation Court, a permanently partially disabled worker, who is by definition less disabled, can receive an impairment award while a permanently totally disabled worker is deprived of the benefit. Therefore, the most disabled of all claimants, despite having an undisputed impairment rating caused as a result of a permanent loss of physical function, would receive no impairment award. Furthermore, an injured worker who is at first classified as a permanently partially disabled worker, but is subsequently reclassified as permanently totally disabled is eligible for a full impairment award, while another worker with the same injury who is from the onset classified as permanently totally disabled is ineligible. Such a result would be unreasonable and cannot have been the Legislature's intent.

¶30 We conclude, therefore, that permanently totally disabled claimants are legally entitled to an impairment award for the loss of physical function of their body occasioned by a work-related injury pursuant to the recognition of such awards in § 39-71-710, MCA, and § 39-71-737, MCA. The Workers' Compensation Court's conclusion to the contrary is reversed.

ISSUE 2

¶31 Is an impairment award due to a permanently totally disabled claimant upon the receipt of his or her undisputed impairment rating or upon retirement?

¶32 The primary issue presented to the Workers' Compensation Court by the parties was when an impairment award should be paid to a permanently totally disabled claimant. The

14

State Fund contended that an impairment award should be paid at age 65 upon retirement pursuant to § 39-71-710, MCA. The claimants, on the other hand, contended that an impairment award is due immediately upon the receipt of an undisputed impairment rating, and should be paid concurrently with permanent total disability benefits pursuant to § 39-71-737, MCA. The District Court did not reach this issue based on its resolution of Issue 1.

¶33 The rules of statutory construction require the language of a statute to be construed according to its plain meaning. If the language is clear and unambiguous, no further interpretation is required. *Lovell v. State Compensation Mut. Ins. Fund* (1993), 260 Mont. 279, 285, 860 P.2d 95, 99.

¶34 Section 39-71-737, MCA (1991 & 1997), states that compensation benefits shall run consecutively "except that impairment awards and auxiliary rehabilitation benefits may be paid concurrently with other classes." Section 39-71-737, MCA (1991 & 1997), is clear and unambiguous, and the claimants in this case are, therefore, entitled to receive their impairment awards concurrently with their permanent total disability benefits. The State Fund's reliance on § 39-71-710, MCA (1991 & 1997), is misplaced. Section 39-71-710, MCA (1991 & 1997), merely states than an insurer remains liable for payment of an impairment award if it has not already been paid to the claimant before age 65. It says nothing to suggest that payment should be delayed until retirement. Furthermore, to read such a meaning into the statute would create another absurd result. Partially disabled workers would be entitled to impairment awards while receiving their disability benefits, but

15

totally disabled workers who presumably have the greater need would not be. Again, we conclude that the Legislature could not reasonably have had such an intention.

¶35 For these reasons, we conclude that an impairment award is due a permanently totally disabled claimant upon receipt of his or her undisputed impairment rating.

ISSUE 3

¶36 Should an impairment award to a permanently totally disabled claimant be characterized as a total or partial disability benefit?

¶37 An issue raised by the conservator of the estate of Kevin Rausch, which went unaddressed by the Workers' Compensation Court based on its resolution of Issue 1, is how impairment benefits due a permanently totally disabled claimant should be characterized. The characterization of the impairment award is significant because it determines whether there is a social security offset. The Social Security Administration offsets benefits which are designated as partial benefits, but does not offset permanent or temporary total disability benefits.

¶38 Rausch contends that his impairment award should be characterized as part of his permanent total disability benefits, since impairment is simply the functional or medical component of that disability.

¶39 The State Fund did not address this issue in its brief on appeal. However, in the Workers' Compensation Court, the State Fund contended that an impairment award should be classified as neither a permanent total disability benefit nor a permanent partial disability benefit. The State Fund asserted that an impairment award is a unique benefit distinct from

16

disability benefits and intended only to compensate claimants for the medical component of their disability. Therefore, it urged the Workers' Compensation Court to characterize impairment awards as a special class of benefits referred to as an "impairment award."

¶40 The problem with the approach suggested by the State Fund is that the Social Security Administration does not recognize a class of benefits entitled "impairment award" or "impairment benefits." Periodically, the Social Security Administration requests workers' compensation insurers to complete a form for confirmation and classification of workers' compensation benefits being paid to individuals who concurrently receive workers' compensation benefits and social security disability benefits. Therefore, because Rausch will receive an impairment award, the State Fund will have to advise the Social Security Administration of how it classified those benefits by completing Form SSA-1709. Form SSA-1709, however, like Montana law, only recognizes the existence of four classifications of benefits, i.e., temporary partial, temporary total, permanent partial and permanent total. If we were to adopt the State Fund's suggestion, and a fifth classification of benefits was recognized under the guise of "impairment benefits," the Social Security Administration has stated that it would categorize the impairment award as a permanent partial benefit. Therefore, the Social Security Administration will offset Rausch's disability benefits, even though Rausch is permanently totally disabled, not permanently partially disabled.

¶41 That result irrationally reduces Rausch's impairment award benefit, even though the State Fund concedes that impairment is merely the medical component of his total disability and that classification of impairment benefits for a permanently totally disabled worker as

17

a partial disability benefit is improper. The most logical approach is to characterize the impairment award consistently with the claimant's disability status, considering that the impairment is a result of the claimant's injury and a substantial factor in his disability.

¶42 Therefore, we conclude that because Kevin Rausch was permanently and totally disabled, his impairment award should be characterized as a permanent total disability benefit.

## ISSUE 4

¶43 Are claimants' attorneys entitled to attorney fees pursuant to the common fund doctrine?

¶44 Claimants' attorneys contend they are entitled to attorney fees pursuant to the common fund doctrine for all similarly situated permanently totally disabled claimants who have been denied immediate impairment awards by the State Fund, and will now be able to obtain those benefits as a result of this decision. As authority, claimants' attorneys cite this Court's decision in *Murer v. State Comp. Mut. Ins. Fund* (1997), 283 Mont. 210, 942 P.2d 69. The State Fund did not respond to the claimants' request for common fund attorney fees in the brief submitted for this appeal.

¶45 Generally, the common fund doctrine "authorizes the spread of fees among those individuals benefitting from the litigation which created the common fund." *Mountain West Farm Bureau Mut. Ins. Co. v. Hall*, 2001 MT 314, ¶ 14, 308 Mont. 29, ¶ 14, 38 P.3d 825, ¶ 14. The common fund doctrine provides:

18

> [W]hen a party has an interest in a fund in common with others and incurs legal fees in order to establish, preserve, increase, or collect that fund, then that party is entitled to reimbursement of his or her reasonable attorney fees from the proceeds of the fund itself.

*Murer*, 283 Mont. at 222, 942 P.2d at 76.

¶46 To be awarded attorney fees based on the common fund doctrine, a party must satisfy three elements. First, a party (or multiple parties in the case of a consolidated case) must create, reserve, increase, or preserve a common fund. This party is typically referred to as the active beneficiary. Second, the active beneficiary must incur legal fees in establishing the common fund. Third, the common fund must benefit ascertainable, non-participating beneficiaries. *Mountain West*, ¶¶ 15-16, 18.

¶47 In *Murer*, claimants engaged in complex, lengthy, and expensive litigation that resulted in a legal precedent which directly benefitted a substantial number of workers' compensation claimants who were neither parties to nor directly involved in the *Murer* litigation. 283 Mont. at 223, 942 P.2d at 76. In addition, "claimants established a vested right on behalf of the absent claimants to directly receive immediate monetary payments of past due benefits underpayments; . . . ." *Murer*, 283 Mont. at 223, 942 P.2d 76-77. We held:

> [W]hen a party, through active litigation, creates a common fund which directly benefits an ascertainable class of non-participating beneficiaries, those non-participating beneficiaries can be required to bear a portion of the litigation costs, including reasonable attorney fees. Accordingly, the party who creates the common fund is entitled, pursuant to the common fund doctrine, to reimbursement of his or her reasonable attorney fees from that fund.

*Murer*, 283 Mont. at 223, 942 P.2d at 76.

19

¶48 Pursuant to *Murer*, we conclude that claimants' attorneys in this case are entitled to common fund attorney fees. The attorneys representing Rausch, Fisch and Frost all engaged in active litigation which preserved the benefit of immediate impairment awards to permanently totally disabled claimants. The attorneys incurred legal costs and fees in the preservation of that right, and the common fund will benefit an ascertainable class of workers who were denied immediate payment of an impairment award by the State Fund which they were legally entitled to receive. Those absent claimants will receive the benefit "even though they were not required to intervene, file suit, risk expense, or hire an attorney." *Murer*, 283 Mont. at 223, 942 P.2d at 77. Accordingly, claimants' attorneys are entitled to reasonable attorney fees for the creation or preservation of a common fund, and those fees should be divided among the three firms involved in this case. This case is remanded to the Workers' Compensation Court for a determination of a reasonable fee.

¶49 Finally, claimants request this Court to award a twenty percent penalty against the State Fund for its unreasonable initial denial of benefits and delay in payment of their impairment awards. However, we conclude that unreasonable conduct has not been established and, therefore, decline to assess a penalty.

¶50 Accordingly, we conclude that permanently totally disabled claimants are entitled to impairment awards, which are due upon the receipt of the undisputed impairment rating. Furthermore, impairment awards of permanently totally disabled claimants should be characterized as a permanent total disability benefit. Finally, we conclude that claimants'

20

attorneys are entitled to reasonable attorney fees pursuant to the common fund doctrine, but that claimants are not entitled to a twenty percent penalty.

¶51    We reverse the order of the Workers' Compensation Court and remand for further proceedings consistent with this Opinion.

_____
                                                              Justice

We Concur:


_____
                Chief Justice


_____


_____
                   Justices

21

Justice Jim Rice, specially concurring.

¶52 I concur with the holding of the Court herein, and offer the following comments in regard to Issue 1.

¶53 The Workers' Compensation Court was faced with the unenviable duty of construing, not just one statute, but the entirety of the statutory framework surrounding impairment awards. As evidenced by the opinions herein of both the Workers' Compensation Court and this Court, determining the proper interpretation of the statutes was a difficult task, even with application of maxims of statutory construction. A reading of the statutes gives the distinct impression that the impairment award is a benefit provided in all disability cases. However, a closer review reveals that such an entitlement is not explicitly created. The situation is something akin to a group of people talking about an absent comrade. They all know he exists. He just isn't there.

¶54 Nonetheless, I believe the conclusion drawn by the Court from the limited direction provided by the statutes is the correct one, and would offer the following additional reasons therefor. I diverge from the Workers' Compensation Court's rationale at ¶ 20 of its opinion, wherein it states:

> Claimants argue that failure to interpret section 39-71-737, MCA, as entitling permanently totally disabled claimants to impairment awards would render the section's reference to impairment awards meaningless. If that were so, the Court might have to deem the statute ambiguous and consider the maxim of statutory interpretation that courts should attempt to construe a statute in a manner which does not render it meaningless, *Albright v. State By and Through State*, 281 Mont. 196, 206, 933 P.2d 815, 821 (1997). However, failure to adopt claimants' interpretation does not render the language

22

meaningless. There are other benefits which a claimant might receive concurrently with an impairment award, specifically, an award for disfigurement, § 39-71-708 (1991, 1997), MCA, and rehabilitation benefits §§ 39-71-1006, MCA (1997), 39-71-2001, MCA (1991).

The Workers' Compensation Court thus found that its interpretation would not render meaningless the provision of § 39-71-737, MCA, which authorized payment of impairment awards "with other classes," because there were "other benefits" which a claimant might receive concurrently with an impairment award, namely, rehabilitation or disfigurement benefits. However, our case law construes "classes" of benefits in a manner which supports the claimants' argument.

¶55    In *Reeverts v. Sears, Roebuck & Company* (1994), 266 Mont. 509, 517, 881 P.2d 620, 625, the Court, citing *Dosen v. East Butte Copper Mining Company* (1927), 78 Mont. 579, 254 P. 880 (overruled on other grounds), held that:

> [T]his Court observed that [§ 39-71-737, MCA, of the Workers' Compensation Act], as it existed in 1927, contemplated the possibility of four resulting conditions from an injury: (1) temporary total disability; (2) permanent total disability; (3) temporary partial disability; and (4) permanent partial disability. The Court held that the term "classes" mentioned in this predecessor to § -737 referred to the different types of disability benefits which could potentially be received for a single injury. We held that they had to be paid successively in the order provided for in the statute, and that payment for two different classes could not be made over the same period of time.

Thus, the term "class of benefits" is restricted by this interpretation to the four referenced disability classes. Given this longstanding interpretation, the provision of § 39-71-737, MCA, which now authorizes payment of an impairment award "with other classes" cannot be satisfied by the payment of rehabilitation or disfigurement benefits, as held by the

23

Workers' Compensation Court. These other benefits are not considered "disability" benefits by their authorizing statutes and do not constitute "classes" of benefits. Consequently, I find that the interpretation offered by the Workers' Compensation Court would render § 39-71-737, MCA, meaningless, and I would construe the statute to hold that impairment awards are to be paid concurrently with permanent total disability benefits.

¶56 I disagree with the Court's rationale set forth in ¶ 29, wherein it reasons that the Workers' Compensation Court's conclusion that a permanently partially disabled worker can receive an impairment award while a permanently totally disabled worker is deprived of the award, is based upon a statutory interpretation which leads to an absurd result. While this result may be thought to lack reason from a policy point of view, I do not believe this to be an absurd result that compels a different statutory interpretation. The Legislature may very well decide to restrict impairment awards to partially disabled workers, but for the reasons set forth above, I do not believe it has done so.

¶57 For these reasons, I concur with the Court.

_____
Justice

24

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶58    I agree with the Court's statutory analysis at ¶¶ 25 through 27, but disagree with the remainder of its discussion on issue one. I would affirm the Workers' Compensation Court's conclusion that permanently totally disabled workers are not entitled to receive impairment awards under the 1991 and 1997 Acts. As a result, I would not reach the remaining issues.

¶59    The Workers' Compensation Court's statutory analysis, and this Court's statutory analysis at ¶¶ 25 through 27, can be summarized relatively briefly. Both courts determined that, pursuant to § 39-71-703(1), MCA (1991), a worker who suffered a permanent partial disability, but was no longer entitled to either temporary total or permanent total disability benefits, was entitled to a permanent partial disability award. No stand-alone "impairment award" was available to such an injured worker; rather, an "impairment rating"--based in part on the amount of wage loss--was calculated and used in determining the amount of the permanent partial disability award. *See* § 39-71-703(2) and (3), MCA (1991). Both courts also determined, on the other hand, that § 39-71-703(2), MCA (1997), provided for a stand-alone "impairment award" for an injured worker who received an impairment rating but had no actual wage loss. Such a worker received only the impairment award; he or she did not receive permanent partial disability benefits because no actual wage loss occurred. *See* § 39-71-703(1) and (2), MCA (1997). I agree with these analyses.

¶60    The Workers' Compensation Court then proceeded to address §§ 39-71-737, MCA

25

(1991) and (1997), which are identical with respect to the provision under which the claimants in this case assert entitlement to an impairment award in addition to permanent total disability benefits. Both statutes provide generally that compensation is to run consecutively, and that payment shall not be made for two classes of disability over the same period; the language at issue then states, as an exception, "that impairment awards . . . may be paid concurrently with other classes of benefits." *See* §§ 39-71-737, MCA (1991) and (1997). The Workers' Compensation Court rejected the claimants' arguments thereunder, concluding that "[n]either version creates any entitlement to an impairment award. . . . It only prescribes when different classes of benefits which are authorized in other sections may be paid concurrently. *The claimant must be due the benefits in the first place for the section to apply.*" (Emphasis added.) I agree with the Workers' Compensation Court's analysis.

¶61 That court also addressed both the 1991 and 1997 versions of § 39-71-710, MCA, on which the claimants relied. While the statutes differ in detail, they generally address termination of certain benefits on retirement and remaining liability for other benefits; specifically, §§ 39-71-710, MCA (1991) and (1997), both state that, on a claimant's retirement, "the insurer remains liable for . . . any impairment award . . . ." As with § 39-71-737, MCA, the Workers' Compensation Court concluded that the latter language "can only be construed as indicating that liability for the award must exist in the first instance," independently of § 39-71-710, MCA, and does not create any entitlement to benefits not otherwise created in the Workers' Compensation Act. Again, I agree with the Workers'

26

Compensation Court.

¶62 It is not altogether clear whether this Court has determined directly that the Workers' Compensation Court erred in its statutory analysis of §§ 39-71-710 and 39-71-737, MCA, since its opinion does not expressly address those analyses. Instead of doing so, the Court moves to a "final consideration" as a necessary part of its "statutory analysis," and accepts the claimants' argument that to disallow an impairment award to permanently totally disabled claimants, when such an award is statutorily provided to permanently partially disabled claimants, "would lead to an absurd result, and contravene the intent underlying the Workers' Compensation Act." The Court offers no authority in this regard, but relies on *Johnson* for the general principle that "[w]hen more than one interpretation is possible, we will reject an interpretation that leads to an unreasonable result in favor of another that will lead to a reasonable result." It is my view that the Court errs in these regards.

¶63 First, the Court does not state how "more than one interpretation is possible" of the statutes and language at issue here. While it observes that impairment awards are "recognized" in §§ 39-71-710 and 39-71-737, MCA, that observation does not explain how "recognition" of the existence of impairment awards elsewhere in the Workers' Compensation Act properly results in a determination that some statute provides an entitlement to an impairment award. Our first rule in ascertaining legislative intent is to construe the plain language of the statutes at issue. *See, e.g., Langemo v. Montana Rail Link, Inc.*, 2001 MT 273, ¶ 22, 307 Mont. 293, ¶ 22, 38 P.3d 782, ¶ 22 (citations omitted). The

plain language of these statutes does not support the Court's implicit determination that more than one interpretation is possible here under any ordinary rules of statutory construction.

¶64 Nor do I believe the Court's somewhat blithe statement that the result produced by a proper statutory analysis would be "unreasonable and cannot have been the Legislature's intent"--without any legal analysis--is sufficient to create a right to an impairment award when no statute does so. The job of courts "is simply to ascertain and declare what is in terms or in substance" contained in a statute, "not to insert what has been omitted. . . ." Section 1-2-101, MCA. The Court here is inserting into a purely statutory scheme an entitlement to a right not provided therein. I cannot agree.

¶65 I would affirm the Workers' Compensation Court's conclusion that these permanently totally disabled claimants are not legally entitled to an impairment award in addition to their other benefits.

_____
Chief Justice

28