No. 04-276

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 90

RUBEN FELLENBERG,

        Petitioner and Appellant,

   v.

TRANSPORTATION INSURANCE COMPANY,

        Respondent and Respondent.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                      Cause No. WCC 2002-0704
                      The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Jon L. Heberling, McGarvey Heberling Sullivan & McGarvey, Kalispell, Montana

        For Respondent:

                David M. Sandler, Hammer Hewitt & Sandler, Kalispell, Montana

                              Submitted on Briefs:  October 14, 2004

                                       Decided:  April 12, 2005

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1	Ruben Fellenberg (Fellenberg) appeals the Workers' Compensation Court's denial of his claim for benefits under the Occupational Disease Act of 1985.  We affirm.

**ISSUES**

¶2	Fellenberg presents the following issues on appeal:

¶3	1.  Did the Workers' Compensation Court (WCC) err in concluding that he is not entitled to permanent total disability (PTD) benefits?

¶4	2.  Did the WCC err in concluding that he is not entitled to 500 weeks of permanent partial disability (PPD) benefits under *Hunter v. Gibson Products of Billings* (1986), 224 Mont. 481, 730 P.2d 1139?

¶5	3.  Did the WCC err in concluding that he is not entitled to an impairment award?

¶6	4. Are various statutes in the Montana Occupational Disease Act (MODA) unconstitutional?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7	Fellenberg worked for W.R. Grace/Zonolite (Grace) in Libby, Montana, from 1958 until July 1986.  In March 1985, Fellenberg was diagnosed with asbestosis.  He immediately filed a report of occupational disease alleging that his asbestosis arose out of his employment.  Transportation Insurance Company (Transportation), Grace's insurer at that time, denied the claim.

¶8     In July 1986, at the age of 62, Fellenberg retired.  He elected early social security retirement benefits, which he has been receiving since 1986.  He also has been receiving a pension from Grace since 1986.

¶9     Since his retirement, Fellenberg's lung disease has become progressively worse, and in October 1998, his personal physician deemed him permanently totally disabled.  On December 5, 2002, Fellenberg filed a Petition for Trial seeking compensation and medical benefits under the 1985[1] Montana Occupational Disease Act.  In February 2003, Transportation accepted liability for Fellenberg's illness but challenged the claim on several grounds.

¶10    Following a trial, the WCC issued Findings of Fact, Conclusions of Law and Judgment.  The WCC found that, while still capable of working, Fellenberg voluntarily retired from Grace in 1986, for reasons unrelated to his occupational asbestos disease.  The court further found that Fellenberg has not worked since his retirement and that at the time of his retirement, he had no intention of returning to the work force.  Fellenberg does not dispute these findings.

¶11    The WCC concluded that, as a result of his voluntary withdrawal from the labor force in 1986, Fellenberg was not entitled to PTD benefits because he did not meet the statutory requisites for such benefits.  Specifically, the court concluded Fellenberg had no "loss of actual earnings" or loss of "earning capability" as a result of his occupational disease; rather,

---

[1]  The WCC decided the matter under the 1983 MODA.  Use of the 1983 Act was acceptable to the parties as there was no substantive difference between the 1983 and 1985 Acts.

3

his "loss of actual earnings" was the result of his voluntary retirement. Furthermore, while finding that Fellenberg suffered a sixty percent loss of earning capability, the WCC concluded that such a reduction in earning capability was not compensable because he had voluntarily retired at 62, and at age 79, did not work and did not intend to work. The WCC also concluded that under the 1983 version of § 39-71-710, MCA, Fellenberg would not be entitled to PTD benefits at any future time because he receives social security retirement benefits.

¶12    Having determined that Fellenberg was not entitled to PTD benefits, the WCC concluded that Fellenberg likewise did not qualify for PPD benefits, pursuant to *Hunter*. The Court also concluded that Fellenberg was not entitled to an impairment award. Lastly, the WCC considered Fellenberg's constitutional challenges to two of the four statutes in question and held that the statutes were constitutional. Fellenberg appeals these WCC determinations.

### STANDARD OF REVIEW

¶13    Our review of a WCC decision is twofold. We review the court's findings of fact to determine whether they are supported by substantial credible evidence and its conclusions of law to determine whether they are correct. *Van Vleet v. Ass'n of Counties Work. Comp.*, 2004 MT 367, ¶ 9, 324 Mont. 517, ¶ 9, 103 P.3d 544, ¶ 9 (citation omitted).

4

**DISCUSSION**

¶14    Fellenburg maintains that the WCC erred in taking into account his voluntary retirement when considering his eligibility for PTD benefits. Transportation counters that the cause of one's loss of earnings and earning capability is critical to one's eligibility for PTD benefits, and that, since Fellenburg retired voluntarily and for reasons wholly unrelated to his asbestosis condition, he fails to qualify for PTD benefits under the PTD statute.

¶15    "Permanent total disability," as defined by the 1983 Workers' Compensation Act,[2] means:

> a *condition resulting from injury* as defined in this chapter *that results in the loss of actual earnings or earning capability* that exists after the injured worker is as far restored as the permanent character of the injuries will permit and *which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market*. Disability shall be supported by a preponderance of medical evidence. (Emphasis added.)

Section 37-71-116(13), MCA (1983).

¶16    As argued by Transportation, in addition to meeting the specific medical and labor market components of § 37-71-116(13), MCA, to qualify for benefits, a claimant must also establish a causal connection between his or her injury and the right to benefits. "Causation is an essential element to an entitlement to benefits and the claimant has the burden of proving a causal connection by a preponderance of the evidence." *Grenz v. Fire and Cas. of Connecticut* (1991), 250 Mont. 373, 820 P.2d 742 (citing *Brown v. Ament* (1988), 231

---

[2]    The MODA does not define "permanent total disability," therefore, the WCC correctly relied on the definition contained in the Workers' Compensation Act.

5

Mont. 158, 163, 752 P.2d 171, 174.) See also *Hash v. Montana Silversmith* (1993), 256 Mont. 252, 257, 846 P.2d 981, 983.

¶17    To be entitled to benefits under § 37-71-116(13), MCA, Fellenberg must prove that he has a "condition resulting from an injury" as defined in the applicable statutes, and that it is the injurious condition that "results in the loss of actual earnings" or a loss of "earnings capability." While acknowledging that Fellenberg had an injurious condition that was one hundred percent attributable to his former employment with Grace, the WCC concluded that Fellenberg failed to establish that his 1998 disability condition caused a "loss of actual earnings." It is important to note that this conclusion stems from certain undisputed facts. Fellenburg admitted in testimony that his 1986 retirement was not related to his lung disease. Moreover, he said that he did not work nor did he intend to return to work after 1986. In other words, Fellenberg ceased receiving "actual earnings" at the time he retired, and that "loss of actual earnings" had nothing to do with his medical condition. The court also concluded that, while Fellenberg had a sixty percent diminution in earnings capability, his voluntary retirement and lack of intent to return to work precluded recovery based on diminished wage capability.

¶18    Fellenberg cites numerous cases to support his argument that he need not be seeking employment to qualify for PTD benefits. We conclude the cases relied upon by Fellenberg are factually as well as legally distinguishable because they do not address the statutory causation nexus that is dispositive of this case.

6

¶19 In the case before us, the WCC's ruling was based on the lack of causal connection between Fellenberg's claimed loss of wages and earning capability, and his illness. In *Brurud v. Judge Moving & Storage Co., Inc.* (1977), 172 Mont. 249, 563 P.2d 558, upon which Fellenberg relies, a fifty-eight-year old heavy laborer suffered a serious and disabling work-related back injury. As a result of Brurud's medical reports, his age, education and experience, the WCC concluded that he was PTD. The employer and insurer challenged the WCC's determination, arguing, among other things, that before the WCC could conclude that Brurud was entitled to PTD benefits, "a finding must be made that [Brurud] made a reasonable effort to find regular employment but that no reasonable prospect existed." *Brurud*, 172 Mont. at 253, 563 P.2d at 560. This Court, in affirming the WCC, stated that the statute does not require that a claimant make a reasonable effort to secure employment because "[i]n some cases, this Court can foresee the futility of such an effort." *Brurud*, 172 Mont. at 253, 563 P.2d at 560. *Brurud* is distinguishable from the case at bar. Brurud was forced to stop working *as a result of* his job-related injury, while Fellenberg quit working for reasons unrelated to his injury. If anything, *Brurud* supports the WCC's determination that there must be a tangible causal link between a claimant's injury or illness and his or her claim for lost wages and earning capability.

¶20 For the same reasons as those noted above, *Walker v. H.F. Johnson, Inc.* (1978), 180 Mont. 405, 591 P.2d 181, relied upon by Fellenberg, is also inapposite. There, the claimant could not perform his past summer work as a direct result of a disabling work-related injury. His lost earning capability was not the result of his voluntary and permanent withdrawal

7

from the work force, but rather stemmed directly from his condition. In both *Brurud* and *Walker*, it is undisputed that the claimants would have returned to work but for their injuries. This crucial element is lacking here.

¶21 The WCC made a factual finding that Fellenburg was not entitled to benefits for loss of earning capability. Even if we accept as true Fellenburg's contention that he is one hundred percent disabled because he has no earning capability in his labor market, the fact remains that his decision not to work again has been both long-standing and resolute--he decided years ago, for reasons unrelated to his disability, never to work again. Nor has he testified that he would return to work now, but for his disability. Therefore, the causal connection between the loss of earning capability and his disabling condition resulting from injury that the PTD statute requires, is missing.

¶22 In *Hash v. Montana Silversmith* (1993), 256 Mont. 252, 846 P.2d 981, we held that while it was possible to calculate an award for loss of earning capability, the calculation was irrelevant because Hash had failed to demonstrate that her injury caused her loss of earning capability. Without such causal connection, we concluded, Hash simply did not qualify for PTD benefits under the statute. *Hash*, 256 Mont. at 258, 846 P.2d at 984. The same result is compelled here, for the same reason. We therefore conclude the WCC did not err in denying Fellenburg PTD benefits.

¶23 Because we find the lack of causation issue dispositive, we need not reach the remaining theories addressed by the parties under which Fellenburg might otherwise be entitled to or denied PTD benefits.

¶24    We likewise affirm the WCC's determination with respect to Fellenburg's claim for PPD benefits. As Fellenburg himself argues on appeal, he would be entitled to 500 weeks of PPD benefits under *Hunter v. Gibson Products of Billings* (1986), 224 Mont. 481, 730 P.2d 1139, if he is PTD. As we have determined that he is not PTD, this entitlement does not follow.

¶25    Fellenberg also challenges the WCC's conclusion that he is not entitled to an impairment award. Fellenberg argues that as a result of his PTD, he is entitled to a disability award in accordance with *Holton v. F.H. Stoltze Land & Lumber Co.*[3] (1981), 195 Mont. 263, 637 P.2d 10. In *Holton*, the Court allowed an impairment rating to be immediately payable in a PPD case. Subsequently in *Rausch v. State Compensation Ins. Fund*, 2002 MT 203, 311 Mont. 210, 54 P.3d 25, we held that under 1991 and 1997 laws, an impairment award is "for the loss of physical function of their body occasioned by a work-related injury," is not tied to PPD benefits, and is payable to PTD as well as PPD claimants. *Rausch*, ¶ 30. Fellenberg advocates the application of *Rausch* to his case. The WCC, however, concluded that *Rausch* did not apply; rather *Grimshaw v. L. Peter Larson Co.* (1984), 213 Mont. 291, 296, 691 P.2d 805, 807, which interpreted *pre-1987* applicable law, controlled. Grimshaw stated "[i]f the claimant is not presently entitled to receive partial disability benefits, *Holton* does not apply." The WCC concluded that *Grimshaw* expressly

---

[3]   The statutory definition of PPD as relied upon in *Holton* and *Grimshaw v. L. Peter Larson Co.* (1984), 213 Mont. 291, 691 P.2d 805, was revised in 1991. As a result, the *Holton* and *Grimshaw* decisions have been superceded by statute as stated in *Williams v. Plum Creek Timber Co.* (1995), 270 Mont. 209, 891 P.2d 502. This subsequent statutory revision, however, does not affect our analysis or the ruling in the case before us.

prohibited a non-PPD qualified claimant under pre-1987 law from receiving a *Holton* impairment award. The court further opined that while *Rausch* had adopted another rule as to post-1991 claims, *Rausch* had not overturned *Grimshaw* and it was not the role of the WCC to overrule Supreme Court decisions. We agree with the WCC that *Grimshaw* controlled in the case at bar and under *Grimshaw*, Fellenberg is not entitled to a *Holton* impairment award.

¶26    Finally, Fellenberg raises constitutional challenges with respect to four ODA statutes. Basically, he raises equal protection objections to the extent that the statutes in question deny certain benefits to occupationally diseased workers which are otherwise available to injured workers. Notably, though, Fellenberg does not challenge the constitutionality of § 37-71-116(13), MCA, taken from the Worker's Compensation Act, and under which we make our decision. Since our decision does not require us to interpret or apply any ODA statute the constitutionality of which is in question, we need not reach Fellenberg's constitutional challenges to those statutes.

**CONCLUSION**

¶27    For the foregoing reasons, we affirm the Workers' Compensation Court.


                                              /S/ PATRICIA O. COTTER



We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE