No. 01-182

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 34

JERRY SEAMAN, Licensee,
The Depot Bar & Casino,

Petitioner and Respondent,

v.

THE STATE OF MONTANA,
DEPARTMENT OF REVENUE,

Respondent and Appellant.

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
Honorable Richard G. Phillips, Judge Presiding

COUNSEL OF RECORD:

 For Appellant:

   Michele R. Crepeau, Tax Counsel, Department of Revenue,
   Helena, Montana

 For Respondent:

   Francis J. McCarvel, Attorney at Law, Glasgow, Montana

Submitted on Briefs: August 9, 2001

Decided: February 26, 2002

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Appellant, State of Montana, Department of Revenue (DOR), appeals from an order entered by the Fifteenth Judicial District Court, Roosevelt County, reversing DOR's order revoking Jerry Seaman's (Seaman) All-Alcoholic Beverage License. We affirm.

¶2 The following issues were presented for review:

¶3 1. Whether the District Court properly determined that the DOR failed to comply with the requirements of § 16-6-303, MCA.

¶4 2. Whether the DOR violated Seaman's due process rights.

FACTUAL AND PROCEDURAL BACKGROUND

¶5 Seaman is the holder of a Montana All-Alcoholic Beverage License and the operator of the Depot Bar and Casino in Poplar, Montana. On April 17, 1996, after a lengthy investigation by the Montana Department of Justice (DOJ), DOJ issued criminal citations charging Seaman with violating §§ 16-6-301 and 16-6-303, MCA, by selling liquor not purchased from an agency liquor store. Seaman was found guilty of both charges on January 14, 1997, in Justice Court. On September 19, 1997, DOR advised Seaman that it intended to revoke his license, and after a hearing, DOR issued an order revoking Seaman's license on March 24, 2000.

¶6 The investigation leading to the charges against Seaman began in December 1995, when Roosevelt County Sheriff John Granger, while shopping in Williston, North Dakota, noticed Seaman's pickup truck parked outside the Rough Rider Liquor Store. He observed Seaman exit the liquor store pushing a cart loaded with three or four cases of alcohol and place the cases into his truck. After observing Seaman, Sheriff Granger advised the Gambling Division of the DOJ of his observations and requested investigative assistance. DOJ investigators attempted over the next few months to observe Seaman purchasing liquor in North Dakota and transporting it into Montana.

¶7 On January 3, 1996, the DOJ investigators traveled to Williston, North Dakota, where they made application for, and were granted, a search warrant to seize records and documents pertaining to sales of alcohol from the Rough Rider Liquor Store to Seaman during the calendar year 1995. The records indicated that Seaman had purchased liquor from the store at least nineteen times during that year. DOJ investigators were able to correlate Seaman's purchases as indicated on sales tax exemption forms with cash register tapes from the store.

¶8 After obtaining evidence of Seaman's North Dakota liquor purchases, the investigators interviewed Seaman and performed an inspection of his bar on April 17, 1996. At that time, the investigators seized fifteen bottles of rum and two bottles of vodka that had been purchased in North Dakota. The same day, the DOJ investigators issued two citations to Seaman, charging him with violating § 16-6-303, MCA, which prohibits a Montana licensee from selling, keeping for sale, or having on the licensee's premises for any reason, any liquor except that purchased from a Montana state agency liquor store, and violating § 16-6-301, MCA, which prohibits any person from possessing in excess of three gallons of an alcoholic beverage purchased in another state or foreign country.

¶9 Seaman was convicted of both charges on January 14, 1997, in Roosevelt County Justice Court. On January 22, 1997, the DOJ investigation report regarding Seaman's out-of-state liquor purchases was received by DOR. The report did not reference Seaman's Justice Court conviction. Following DOR operating procedures, Amber Carpenter (Carpenter), a Liquor Licensing Compliance Specialist, prepared and submitted a draft notice of license revocation to DOR legal counsel for approval in February 1997. After learning of Seaman's conviction, legal counsel instructed Carpenter to revise the notice of revocation. Carpenter prepared a second draft, which was approved by DOR legal counsel and sent to Seaman on September 19, 1997.

¶10 On October 3, 1997, Seaman filed a request for a hearing on the license revocation, and a hearing was ultimately held on October 5 and 6, 1999. The hearing examiner held that Seaman's license was properly revoked by DOR, and that holding was affirmed in the final agency decision issued by the director of DOR on March 24, 2000.

¶11 Seaman then filed a petition for judicial review in the Fifteenth Judicial District Court, which reversed the agency decision. The District Court concluded that DOR failed to comply with the mandate of § 16-6-303, MCA, to "immediately" revoke the license, and that the process of revocation violated Seaman's due process rights. The DOR appeals the District Court's order.

STANDARD OF REVIEW

¶12 A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law. Laudert v. Richland County Sheriff's Dept., 2000 MT 218, ¶ 14, 301 Mont. 114, ¶ 14, 7 P.3d 386, ¶ 14. We employ the same standards when reviewing a district court order affirming or reversing an administrative decision. Langager v. Crazy Creek Prod., Inc., 1998 MT 44, ¶ 13, 287 Mont. 445, ¶ 13, 954 P.2d 1169, ¶ 13.

DISCUSSION¶13 Did the District Court properly determine that the DOR failed to comply with the requirements of § 16-6-303, MCA?

¶14 Section 16-6-303, MCA, states in relevant part:

It is unlawful for any licensee to sell or keep for sale or have on the licensee's premises for any purpose whatever any liquor except that purchased from an agency liquor store. . . . If the department is satisfied that the liquor was knowingly sold or kept for sale within the licensed premises by the licensee or by the licensee's agents, servants, or employees, the department shall immediately revoke the license. [Emphasis supplied.]

¶15 Pursuant to this provision, DOR must "immediately" revoke a license when it is "satisfied" that the license holder has violated the statute. DOR argues that it was not satisfied that a violation of the statute had occurred until it received the investigative report from the DOJ on January 22, 1997. Seaman argues that DOR was satisfied a violation had occurred on April 17, 1996, when the DOJ investigators issued Seaman the two citations, imputing the knowledge of the DOJ investigators onto the DOR, a sister agency in the enforcement of this statute.

¶16 The District Court agreed with Seaman, finding that DOR was "satisfied" a violation of the statute had occurred at the time the citations were issued, but also determining that, at the very latest, DOR was "satisfied" a violation of the statute had occurred on January 14, 1997, when Seaman was convicted of the charges in Justice Court. The District Court reasoned that, using either date, DOR failed to act "immediately" as required by the statute.

¶17 Our decision does not require that we resolve the question of whether the DOR was satisfied for purposes of § 16-6-303, MCA, that a violation of the statute occurred on April 17, 1996, by virtue of DOJ's issuance of the citations to Seaman and imputation of that action to DOR. DOR admittedly was satisfied of the violation when it received the investigative report on January 22, 1997. Seaman's conviction on January 14, 1997, was also sufficient to place DOR on notice and therefore satisfy DOR of the violation for purposes of § 16-6-303, MCA. Our analysis here addresses whether DOR complied with the statute when it issued the notice of revocation eight months thereafter, on September 19, 1997.

¶18 Section 16-6-303, MCA, does not offer a definition of the term "immediately," and this Court has not had occasion to interpret the meaning of the word within the context of this statute. Black's Law Dictionary defines "immediate" as follows:

Present; at once; without delay; not deferred by any interval of time. In this sense, the word, without any very precise signification, denotes that action is or must be taken either instantly or without any considerable loss of time. A reasonable time in view of particular facts and circumstances of case under consideration.

Black's Law Dictionary, 5th Edition, page 675.

¶19 We have previously addressed the meaning of the word in a case construing a divorce statute. In Putnam v. Putnam (1929), 86 Mont. 135, 282 P. 855, this Court referenced various judicial interpretations of the term "immediately," and determined that when used in a statute, where it relates to time, the word has an elastic, rather than a precise meaning. This Court stated:

Taking the liberal view, it means, when referring to the doing of an act, as soon as the act can with reasonable diligence be performed, . . . with due diligence under the circumstances of the particular case, and without unnecessary or unreasonable delay, . . . within a reasonable time, with due diligence, under the circumstances of the particular case, and without unnecessary delay . . . . [Citations omitted.]

Putnam, 86 Mont. at 144, 282 P. at 859-60.

¶20 In determining whether DOR acted immediately, the District Court applied what it considered to be the most lenient definition of the word, using "a reasonable time under the circumstances." This definition is consistent with our prior decisions and the legal meaning of the word as defined above.

¶21 DOR argues that its issuance of the notice of license revocation on September 19, 1997, complied with the requirements of § 16-6-303, MCA. It contends that Carpenter "immediately" began the revocation process once she received the DOJ report on January 22, 1997. She submitted a draft notice to the legal staff for approval. After legal review, Carpenter revised her draft notice and resubmitted it for legal approval. Upon the second review by legal counsel, the notice was approved and issued on September 19, 1997.

¶22 The District Court found that the process involved in issuing a notice of license revocation did not require the delay occasioned here, and, therefore, DOR had not satisfied the statutory mandate that it act immediately. We agree. The notice of revocation itself consists of three paragraphs, barely exceeding one page in length. Carpenter prepared a draft of the notice for review by the legal counsel within a couple of weeks after receiving the DOJ investigative report, but the drafted notice waited for counsel approval for most of the eight-month period preceding its issuance. Even applying the broadest definition of "immediately" from Putnam, "acting in a reasonable time under the circumstances," it cannot be said that DOR acted immediately to revoke Seaman's license by taking eight months to initiate

the process. Therefore, we affirm the District Court's conclusion that the DOR did not comply with the requirements of § 16-6-303, MCA.

¶23 Did the DOR violate Seaman's due process rights?

¶24 The District Court determined that DOR's delay not only violated the statute, but also violated Seaman's rights of due process. Having determined that the District Court properly resolved this matter by holding that DOR's revocation of Seaman's liquor license was improper on statutory grounds, it is unnecessary for this Court to determine if Seaman's due process rights were implicated. Therefore, we decline to address the issue.

¶25 The District Court's order is affirmed.

/S/ JIM RICE


We concur:

/S/ W. WILLIAM LEAPHART
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

Justice Patricia O. Cotter, specially concurring,

¶26 I concur in the Court's disposition of this case, and in its reasoning, as far as it goes. However, there is an additional factual basis for affirming the District Court which the majority felt was unnecessary to the resolution of the case, but which entered into my decision to affirm.

¶27 In the spring of 1996, shortly after DOR investigators issued criminal citations to Seaman charging him with the statutory violations described in the Court's Opinion, Seaman made application to DOR for modification and expansion of his licensed premises. The proposed expansion entailed expensive alterations and improvements to the premises. On May 22, 1997, DOR approved Seaman's request for expansion of his bar and casino. In approving the expansion, DOR did not advise Seaman that it had already undertaken the drafting of the notice to revoke his liquor license.

¶28 Having received DOR approval of his proposed expansion, Seaman expended substantial funds in improving the bar and casino. It was not until September 19, 1997, five months after DOR approved Seaman's expansion of his bar and casino, that DOR first advised Seaman it intended to revoke his license.

¶29 DOR essentially argues that because Seaman had already been convicted in justice court of a statutory violation, he should have known his license could be revoked, and that he thus undertook his business alterations at his own risk. Seaman counters that had DOR "immediately" given notice of its intent to revoke his license, he would have been able to make an informed decision as to whether or not to remodel his premises. This only makes sense. More to the point, a green light for the remodeling project from the entity empowered to revoke one's license would certainly suggest to its beneficiary that his license was, in all likelihood, safe.

¶30 The District Court concluded it was ". . . especially disturbing to note that the Department would approve an expansion of facilities knowing all the while that it was mandated by statute to proceed with revocation of the license." I agree. If the arm of DOR responsible for granting a request to improve a

licensed premises did not know what the arm of DOR handling license revocations was doing, it should have. If it did know, and proceeded to grant the remodeling application anyway, the approval was at best mean-spirited and at worst deceitful. Either way, I cannot countenance a method of doing business which essentially gives with one hand while taking away with the other. Accordingly, I affirm for this reason as well as for the reasons referenced by the Court.

/S/ JAMES C. NELSON


Justice James C. Nelson joins in the foregoing special concurrence.

/S/ JAMES C. NELSON