No. 01-672

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 125

RICHARD FLIEHLER,

       Petitioner and Respondent,

  v.

UNINSURED EMPLOYERS FUND,

       Respondent and Appellant,

  and

GREG CASEY/THE RESTAURANT
INSTALLATION COMPANY,

       Employer.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                  The Honorable Mike McCarter, Judge Presiding

COUNSEL OF RECORD:

       For Appellant:

          Daniel McGregor, Attorney at Law, Helena, Montana

       For Respondent:

          Gary D. Seaman, Seaman Law Firm, Kalispell, Montana

Submitted on Briefs:   February 21, 2002

Decided:       June  11,  2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1   Richard Fliehler filed a claim with the Uninsured Employers' Fund (the "UEF"), which denied the claim.  Fliehler then filed a Petition for Trial in the Workers' Compensation Court (the "WCC"). The WCC found that Fliehler was entitled to compensation benefits and costs from the UEF.  The UEF filed this appeal and we affirm.

¶2   The following issue is dispositive of this appeal:

¶3   Did the Workers' Compensation Court err in concluding that Fliehler was an "employee or worker in this state" as defined by § 39-71-118(10)(a), MCA (1997)?

### BACKGROUND

¶4   Greg Casey owns a business named The Restaurant Installation Company, which installs restaurant kitchens.  On April 23, 1999, Fliehler suffered an injury when he fell off a ladder during his employment with Casey.  The accident took place at a job site in Tulsa, Oklahoma.

¶5   Since 1997, Casey has resided in a home outside Big Fork, Montana.  His work crew, including Fliehler, also reside in the Big Fork area.  Because Casey considered the members of his work crew to be independent contractors, he did not maintain workers' compensation coverage for his business.

¶6   Typically, when a restaurant designer notified Casey that a job was available, Casey would gather his crew and drive to the site.  This normally involved an initial departure from the Big Fork area.  Occasionally, however, Casey and his crew would travel from one out-of-state job site to the next.  They would travel

together in a pickup truck owned by Casey. The truck is also where they permanently kept all of the tools necessary for their jobs.

¶7 In the two years before Fliehler's injury, Casey installed kitchens primarily for three restaurant chains: Marie Callender's, East Side Mario's and McGrath's Fish House. Casey's work projects took place in several western states, including Idaho, Oregon, Washington, California, Texas, Colorado and Oklahoma. He never undertook any projects in Montana, and he testified that the majority of his jobs were in California.

¶8 Fliehler filed a workers' compensation claim with the UEF, which denied coverage because of a lack of medical information. Fliehler then filed a Petition for Trial in the WCC. While Fliehler was able to provide medical information establishing that he was injured, the UEF countered that Montana law did not govern Fliehler. Specifically, the UEF argued that Fliehler was not an "employee or worker in this state," pursuant to § 39-71-118(10)(a), MCA (1997).

¶9 The WCC concluded that Fliehler was an employee of Casey, rather than an independent contractor. The WCC further concluded that Fliehler was an "employee or worker in this state" and thus entitled to workers' compensation benefits and costs from the UEF. The UEF then sought to amend the WCC's findings and conclusions through a post-trial motion. The WCC denied the UEF's motion and issued its "Order Amending Findings of Fact." The UEF then filed this appeal.

3

¶10  Because the parties do not dispute the relevant facts, this appeal presents only a question of law.  We review a Workers' Compensation Court's conclusions of law to determine if they are correct.  *See Russette v. Chippewa Cree Hous. Auth.* (1994), 265 Mont. 90, 91-92, 874 P.2d 1217, 1218.

DISCUSSION

¶11  Did the Workers' Compensation Court err in concluding that Fliehler was an "employee or worker in this state" as defined by § 39-71-118(10)(a), MCA (1997)?

¶12  The UEF argues that the WCC erred in concluding that the Montana Workers' Compensation Act (the "Act") applied to Fliehler.  In deciding that the Act did apply to Fliehler, the WCC had to determine whether Fliehler's "employment duties" were "primarily carried out or controlled within this state."  Section 39-71-118(10)(a), MCA (1997).  While the parties agreed that Fliehler primarily performed his employment duties outside Montana, they disputed where Casey "primarily controlled" these duties.  The WCC ultimately concluded that Casey primarily controlled Fliehler's employment duties within Montana.  The UEF now argues that the WCC improperly interpreted the term "primarily controlled" in reaching its conclusion.

¶13  Statutory interpretation is a "holistic endeavor" that must consider the statute's text, language, structure, and object.  *See S.L.H. v. State Compensation Mut. Ins. Fund,* 2000 MT 362, ¶ 16, 303

4

Mont. 364, ¶ 16, 15 P.3d 948, ¶ 16 (citing *United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.* (1993), 508 U.S. 439, 455, 113 S. Ct. 2173, 2182, 124 L. Ed. 2d 402, 418 (quotations omitted)). When construing a statute, our goal is to ascertain and give effect to the legislative intent. *See* § 1-2-102, MCA; *S.L.H.,* ¶ 16. If the words of the statute are clear and plain, we discern the intent of the legislature from the text of the statute. *See S.L.H.,* ¶ 17; *Western Energy Co. v. State, Dep't of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11. We will also read and construe the statute as a whole to avoid an absurd result and to give effect to a statute's purpose. *See S.L.H.,* ¶ 17; *Skinner Enters. v. Lewis & Clark County Bd. of Health* (1997), 286 Mont. 256, 276, 950 P.2d 733, 745.

¶14 The UEF urges us to interpret "primarily controlled" as the location where Casey performed most of the day-to-day management of his employees. The parties agree that Fliehler conducted his "employment duties," namely the carpentry and metalworking activities involved in installing kitchens, outside Montana. Casey's day-to-day management of these activities, according to the UEF, took place outside Montana. For these reasons, the UEF argues that Casey's primary control of Fliehler's employment duties necessarily took place outside Montana. We disagree.

¶15 Although Casey's management of Fliehler's day-to-day kitchen installation duties may have taken place outside Montana, Casey also controlled Fliehler's employment activities within Montana. Casey's principal place of business was in Big Fork. While Casey

5

performed no jobs in Montana, Montana was the state where he hired his crew, where they left for their jobs and where they returned to live between jobs. Casey also kept his truck and tools at his residence in Big Fork between jobs. Occasionally Casey would receive the plans for his next job at his home in Big Fork. In addition, Casey paid Fliehler in Montana the day after they returned from a job.

¶16 As the WCC noted, "there was no singular point of control in the sense that **all** of [Fliehler's] duties were controlled from Montana, or that **all** of his duties were controlled at non-Montana job cites." When faced with multiple locations where Casey controlled Fliehler's employment duties, the WCC was correct in comparing all of Casey's activities at these various locations and concluding that the primary, principal and ultimate control over Fliehler's work took place in Montana. For these reasons, we conclude that the WCC was correct in concluding that Casey primarily controlled Fliehler's employment duties in Montana.

¶17 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

6