
DA 06-0741

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 254

RODNEY A. BARNARD,

        Petitioner and Appellee,

  v.

LIBERTY NORTHWEST INSURANCE CORP.,

        Respondent, Insurer and Appellant.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                      Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Larry W. Jones, Attorney at Law, Missoula, Montana

        For Appellee:

        Richard J. Martin, Linnell, Newhall, Martin & Schulke, P.C., Great Falls,
        Montana

                      Submitted on Briefs:  August 15, 2007

                      Decided:  July 22, 2008

Filed:

_____
                           Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Rodney Barnard petitioned the Workers' Compensation Court (WCC) for a lump sum conversion of his permanent total disability benefits. The WCC granted his petition. The insurer, Liberty Northwest Insurance (Liberty), appeals the decision of the WCC.

¶2 We restate and address the issues on appeal as follows:

¶3 Issue 1: Does § 39-71-741(1)(c), MCA (2003), limit the Department of Labor and Industry (DLI) to $20,000 lump sum conversions of permanent total disability benefits?

¶4 Issue 2: Did the WCC err in determining that Barnard was entitled to a lump sum payment because the money would be used for his necessities of life?

## BACKGROUND

¶5 Barnard was injured at work on June 22, 2004. His employer was insured by Liberty, which accepted workers' compensation liability under its policy. On May 9, 2005, Liberty agreed to convert Barnard's benefits to permanent total disability benefits. On December 30, 2005, Barnard petitioned the WCC to convert the entire amount of his future benefits to a lump sum settlement. Liberty opposed his petition, arguing that the law prohibits a lump sum payment greater than $20,000 and that he had not shown that he needed the money for necessities of life.

¶6 On March 31, 2006, the WCC held a trial on Barnard's petition. He and his wife testified. The WCC entered findings of fact based on the evidence produced at the trial. It found that Barnard receives slightly less that $900/month in workers' compensation benefits. As of March 2006, the present net value of Barnard's benefits was $80,893.43. He also

2

receives just over $1200/month in Social Security benefits. His wife earns approximately $12,000 to $15,000 annually as a housekeeper.

¶7 Barnard and his wife own 120 acres of land west of Great Falls. They own the property outright and have no debts. Barnard testified that he is strongly opposed to borrowing money, particularly since he lives on a fixed income. He does not want to sell the property and move into town because he pays less tax on his current property and because he uses the property to generate income by raising cattle, as discussed below.

¶8 Barnard and his wife reside in a 1966 mobile home and have been unable to insure the home because of its age. The mobile home is on blocks, not a foundation, and there are three steps that Barnard must climb to get into the home. It also has narrow hallways and a small bathroom. Barnard has difficulty entering and moving about the home because it does not accommodate his wheelchair. The property also includes a building Barnard uses as a shop and an office. He walks from his residence to the shop, where he is able to use a wheelchair. Barnard testified that he wants to use part of the lump sum payment to purchase a new home that is easier for him to get into and use. He anticipates that he would need to purchase a custom-built mobile home.

¶9 Barnard raises cattle on his property. Each year he buys and sells cattle, keeping any profits to buy more cattle the following year. Some years Barnard has lost money on the cattle business, particularly during periods of drought. In other years he has made a profit. He wishes to use part of the lump sum payment to buy additional cattle.

¶10   The Barnards own several vehicles. One truck no longer runs, and another is a 1987 pick-up with 200,000 miles on it. They have a diesel truck they use for towing stock trailers and an unlicensed pick-up used as a farm vehicle. Their newest vehicle is a 2001 Subaru which Mrs. Barnard uses to go to work. Barnard has difficulty getting in and out of these vehicles. He plans to use part of the lump sum payment to buy a newer, reliable car that he can more easily and comfortably use.

¶11   The driveway to the Barnards' property is a half-mile long, and it has a steep grade and a gumbo shale surface. It is difficult to navigate in bad weather and requires the use of chains in the winter. Barnard intends to use part of the lump sum payment to gravel the driveway.

¶12   After considering the evidence presented, the WCC found that Barnard and his wife were credible, that he had established that the lump sum payment of the whole of his permanent total disability benefits was for necessities of life, and that he was entitled to receive the requested lump sum payment of the entire amount of his benefits. Liberty filed a timely appeal.

## STANDARD OF REVIEW

¶13   We review the WCC's findings of fact to determine if they are supported by substantial credible evidence, and we review its conclusions of law to determine if they are correct. *Hiett v. Missoula Co. Pub. Schs.*, 2003 MT 213, ¶ 15, 317 Mont. 95, ¶ 15, 75 P.3d 341, ¶ 15.

## DISCUSSION

4

¶14    *Issue 1: Does § 39-71-741(1)(c), MCA (2003), limit the DLI to $20,000 lump sum*

*conversions of permanent total disability benefits?*

¶15    The applicable workers' compensation statutes are those in effect at the time of an

injury. *Buckman v. Mont. Deaconess Hosp.*, 224 Mont. 318, 321, 730 P.2d 380, 382 (1986).

 Barnard was injured in 2004, so the 2003 statutes in effect at that time apply to his claim.

¶16    Section 39-71-741, MCA (2003),[1] permits the conversion of workers' compensation

benefits to a lump sum in certain circumstances:

> (1) By written agreement filed with the department, benefits under this chapter
> may be converted in whole or in part into a lump sum. . . .   The department
> may approve an agreement to convert the following benefits to a lump sum
> only under the following conditions:
>
>         . . . .
> (c) permanent total disability benefits if the total of all lump-sum conversions
> in part that are awarded to a claimant do not exceed $20,000.  The approval or
> award of a lump-sum permanent total disability payment in whole or in part by
> the department or court must be the exception. . . .

The WCC concluded that this section permits lump sum payments greater than $20,000 if it

is a lump sum conversion of the whole of a permanent total disability benefit.  The WCC

concluded that the $20,000 limitation in § 39-71-741(1)(c), MCA, refers only to lump sum

conversions of a part of an injured worker's permanent total disability benefits.  DLI has

employed a like interpretation of this statute for years.  Liberty challenges the WCC and DLI

interpretation of the statute.

¶17    When the Court interprets a statute, "our goal is to ascertain and give effect to the

legislative intent." *Fliehler v. Uninsured Employers Fund*, 2002 MT 125, ¶ 13, 310 Mont.

5

99, ¶ 13, 48 P.3d 746, ¶ 13.  We first attempt to construe a statute according to its plain meaning.  If the language of the statute is unambiguous, no further interpretation is necessary.  *Rausch v. State Compensation Ins. Fund*, 2002 MT 203, ¶ 33, 311 Mont. 210, ¶ 33, 54 P.3d 25, ¶ 33.  We read all parts of a statute as a whole and strive to give effect to all of its provisions.  Section 1-2-101, MCA; *Fliehler*, ¶ 13.  Our task is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA.  When there is a longstanding agency interpretation of a statute, we will give that interpretation "respectful consideration."  *Glendive Med. Ctr., Inc. v. Mont. Dept. of Pub. Health & Human Servs.*, 2002 MT 131, ¶ 14, 310 Mont. 156, ¶ 14, 49 P.3d 560, ¶ 14 (quotation omitted).

¶18     We have not previously addressed the meaning § 39-71-741(1), MCA, to determine if it strictly limits lump sum conversions of permanent total disability benefits to $20,000.  As both parties note, we have addressed the issue in passing.  *See Martin v. The Hartford*, 2004 MT 57, 320 Mont. 206, 86 P.3d 569.  However, this precise issue was not before us in *Martin*, and our statements in that case regarding the interpretation of § 39-71-741(1), MCA, were not part of our holding.  As we expressly stated in *Martin*, we did not "rule on the correctness of the Department's . . . interpretation" that a lump sum conversion in whole can exceed $20,000.  *Martin*, ¶ 6, n. 1.

¶19     We conclude that the WCC and DLI have correctly interpreted § 39-71-741(1), MCA.  When the statute is read in its entirety, it limits lump sum conversions to $20,000 only if the

[1] Any references hereafter to the workers' compensation statutes refer to the 2003 version unless otherwise

requested conversion to a lump sum constitutes a part of the permanent total disability benefit. Section 39-71-741(1)(c), MCA, does not limit to $20,000 a lump sum payment of the whole of a permanent total disability benefit.

¶20 The language of § 39-71-741(1), MCA, specifies that there may be lump sum payments "in whole or in part." The portion of the statute referring to the $20,000 limitation on lump sum payments refers only to "the total of all lump-sum conversions in part." The Legislature has thus distinguished between a lump sum payment of the whole amount of benefit payments and a lump sum payment of a part of a benefit. We must give effect to this distinction. Section 1-2-101, MCA; *Fliehler*, ¶ 13. The plain language of the statute, coupled with a respectful consideration of the longstanding interpretation by DLI, means that § 39-71-741(1)(c), MCA, limits only the total of partial lump sum payments to $20,000. The WCC correctly concluded that it had authority to order a lump sum payment of the entire amount of Barnard's permanent total disability payment.

¶21 *Issue 2: Did the WCC err in determining that Barnard was entitled to a lump sum payment because it would be used for necessities of life?*

¶22 In order to receive a lump sum conversion of permanent total disability benefits, the employee must demonstrate that he has a financial need that relates to one of several things, one of which is the "necessities of life." Section 39-71-741(1)(c)(i)(A), MCA. To determine whether a lump sum should be awarded, the primary factor courts must consider is the claimant's best interest. *Sullivan v. Aetna Life & Casualty*, 271 Mont. 12, 17, 894 P.2d 278,

noted.

281 (1995). Other factors to be considered include the interests of the claimant's family and the general public, pressing need, and outstanding debt. *Sullivan*, 271 Mont. at 16, 894 P.2d at 280. We accord the WCC wide latitude to determine when a lump sum conversion is appropriate, and we will not substitute our judgment for that of the WCC. *Sullivan*, 271 Mont. at 18, 894 P.2d at 282. The claimant has the burden to show that a lump sum conversion is in his best interest. *Martin*, ¶ 4.

¶23 The WCC found, based on evidence and testimony properly introduced, that it is very difficult for Barnard to get in and out of his house and that it is impossible for him to use his wheelchair in the house. The WCC then found that the inability to comfortably and safely move around his house is a justification for granting his petition for the lump sum payment so that he could purchase a new home. Likewise, the WCC found that the lump sum conversion was justified so that Barnard could purchase a new vehicle and gravel his driveway. The WCC did not err in finding that it was in Barnard's best interest to grant the lump sum so he could use it to expand his cattle business. Contrary to Liberty's assertion that Barnard's ranching activities are a speculative venture that usually loses money, the record contains substantial evidence, which was deemed credible by the WCC, that Barnard carefully manages his money and the cattle often produce a profit. The WCC properly exercised its wide discretion when it found that Barnard would use a lump sum payment for the necessities of life and concluded that it was in his best interest to convert his benefits to a lump sum. We will not interfere.

**CONCLUSION**

8

¶24 We conclude that § 39-71-741, MCA (2003), permits lump sum payments of the whole of permanent total disability benefits, even though such conversions may result in a payment that exceeds $20,000. The WCC did not err in finding that Barnard had met the requirements of § 39-71-741, MCA, and that the lump sum payment he requested would be used for the necessities of life.

¶25 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Chief Justice Karla M. Gray, specially concurring.

¶26 I join in the result the Court reaches in this case. I write separately to address what appears to me to be a disconnect between §§ 39-71-741(1)(c) and (4), MCA (2003), the facts of this case and our existing jurisprudence on the issue of lump-sum conversions. I do so in hopes that, in a future case where these matters are raised and argued, the Court might more clearly resolve the disconnect, and the Legislature might revisit the statutes and provide more clarity about its intent.

9

¶27 As I read § 39-71-741(1)(c), MCA, it applies only to a written agreement between a claimant receiving permanent total disability benefits and the carrier regarding a lump-sum conversion. Such an agreement is filed with the DLI and may be approved under the circumstances set forth in detail in § 39-71-741(1)(c), MCA, which include "the necessities of life[.]" As I read it, this portion of the statute sets limits on the DLI's ability to approve such a conversion. Section 39-71-741(4), MCA, however, provides that "[a] dispute between a claimant and an insurer regarding the conversion of biweekly payments into a lump sum" is a matter entrusted to the jurisdiction of a mediator and the WCC.

¶28 In the present case, no written agreement between Barnard and Liberty was filed with the DLI. Instead, Barnard filed his "dispute" with Liberty over the conversion in the WCC. Our jurisprudence, including *Sullivan*, then authorized the WCC to apply the "best interest" test, rather than the statutory "necessities of life" test which constrains the DLI in approving conversion agreements.

¶29 I recognize the instant case was not presented to either the WCC or this Court under the approach I suggest. I also recognize that this approach has not been utilized in our earlier jurisprudence. I submit, however, that it is the only harmonious construction of two very different subsections of § 39-71-741, MCA. Moreover, it seems to me an appropriate rationale under which the WCC and this Court properly can substitute the "best interest" test for the somewhat more restrictive "necessities of life" test imposed on the DLI in § 39-71-741(1)(c), MCA.

¶30 For these reasons, I join the Court's result. I, too, would affirm the WCC.

10

/S/ KARLA M. GRAY


Justice Jim Rice joins in the foregoing specially concurring opinion.


/S/ JIM RICE

11