DA 07-0334

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 80

SHELBY DISTRIBUTORS, LLC,
a Montana Limited Liability Company,

        Petitioner and Appellant,

  v.

MONTANA DEPARTMENT OF REVENUE,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DV 06-039
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Glenn E. Tremper, Attorney at Law, Great Falls, Montana

        For Appellee:

            Joel E. Silverman, Special Assistant Attorney General, Montana Department of Revenue, Helena, Montana

                Submitted on Briefs:  May 7, 2008

                      Decided:  March 17, 2009

Filed:

_____
             Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Shelby Distributors, LLC (Shelby Distributors), is a beer wholesaler and wine distributor licensed to operate by the Montana Department of Revenue (DOR). A controlling interest in Shelby Distributors is held by Steve Williamson (Williamson). Williamson also owns sufficient stock to control Northern Vending, Inc. (Northern Vending), a Montana corporation. Northern Vending's business is leasing, installing, servicing, and maintaining electronic gaming machines. Northern Vending is a gambling route operator and it has a license to operate in Montana's gaming industry issued by the Montana Department of Justice (DOJ). Northern Vending made loans to alcohol retailers. These loans were reported to and approved by DOJ. However, based on this practice, DOR brought proceedings to revoke Shelby Distributors' license because Williamson controlled both Northern Vending and Shelby Distributors. DOR determined that Shelby Distributors was in violation of state law, penalized it $1,500, and ordered that its beer wholesaler and wine distributor license would be revoked if Northern Vending did not cease making loans to alcohol retailers. Shelby Distributors appealed DOR's final decision to the Ninth Judicial District Court, Toole County. The District Court affirmed DOR and Shelby Distributors now appeals DOR's decision.

¶2 Shelby Distributors raises two issues on appeal, which we restate as follows:

¶3 Issue 1: Did DOR violate Shelby Distributors' due process rights by imposing sanctions against it because of loans made by Northern Vending to liquor retailers when the loans had been approved by DOJ?

2

¶4      Issue 2:  Did DOR and the District Court err in concluding that the loans made by Northern Vending to liquor retailers create prohibited indirect financial interests held by Shelby Distributors in retail liquor businesses?

BACKGROUND

¶5      Through inheritance and purchase, Williamson first acquired a 75% majority ownership interest in Northern Vending.  He later purchased a 55% controlling interest in Shelby Distributors from his mother's estate.  Upon transfer of wholesale liquor distributors licenses to Shelby Distributors, he disclosed his ownership of Northern Vending to DOR. The license transfer to Shelby Distributors was completed in October 1999.

¶6      Over a period of several years, Northern Vending loaned money to alcohol retailers several times.  Before making these loans, Northern was required to secure approval from the Gambling Control Division of DOJ, as funding sources for gaming operations must be approved.  Northern Vending submitted the proper forms to DOJ to obtain approval of the loans at issue in this case, and DOJ subsequently approved them.

¶7      DOR does not have responsibility to assure compliance with gambling laws.  That function lies solely within the Gambling Control division of DOJ.  The Gambling Control Division approved the non-institutional loans in question but did not report these loans to DOR.  As it does not examine transactions involving the gambling industry, DOR was unaware of these loans until Northern Vending sought its approval to acquire and hold a liquor license for a time, pending its resale.

¶8     DOR is responsible for regulation and enforcement of Montana's liquor laws, including the Montana Alcoholic Beverage Code (MABC), Title 16, Chapters 1-6, MCA. However, DOR does not have its own staff to investigate possible violations of the MABC. Section 16-6-101, MCA, provides that investigators attached to DOJ shall, at the request of DOR, investigate possible violations of the liquor control laws and regulations. The two agencies have entered into a Memorandum of Understanding, which provides, in the event of a possible violation of liquor control laws and regulations, DOJ personnel will investigate and report the results of the investigation to DOR. DOR is then responsible for the ultimate determination of whether to pursue a penalty or other sanction based on an alleged violation.

¶9     As a result of a routine investigation of Northern Vending conducted when it sought DOR's approval to hold a retail liquor license for a time, DOR became aware Williamson controlled that company. As Shelby Distributors held a beer wholesaler and wine distributor license, DOR already knew Williamson held the controlling interest in that company. Thus, on January 25, 2000, in connection with the transaction wherein Northern Vending would hold a retail liquor license for a time, a DOR liquor licensing specialist, Jason Wood, sent a letter to Northern Vending and Shelby Distributors' attorney, Don Lee, advising him that the transfer of a liquor license from a retailer to Northern Vending would result in Shelby Distributors having an impermissible financial interest in an alcohol retailer because Williamson controlled both entities. Then, in February of 2000, Wood had a telephone conversation with Lee during which he again told him that the financing was unacceptable. Wood also told Lee that Northern Vending could not loan money on an unsecured note to a

4

licensed liquor retailer as long as Williamson continued to hold the controlling interest in Shelby Distributors. However, following suggestions from DOR on how to structure this transfer, it was subsequently completed. Still, this transaction brought to DOR's attention the fact that Northern Vending had been making unsecured loans to liquor retailers.

¶10 As DOR had become aware that Williamson controlled both Shelby Distributors and Northern Vending, DOR commenced an investigation into possible violations of the MABC by Shelby Distributors in May of 2000. On June 2, 2001, the investigator completed a report which concluded the loans made by Northern Vending to alcohol retailers caused Shelby Distributors to violate §§ 16-3-242, 16-3-406, MCA, because Williamson controlled both entities. According to DOR, control of both Shelby Distributors and Northern Vending by Williamson caused Shelby Distributors to have a prohibited indirect financial interest in the liquor retailer to which Northern Vending had made a loan.

¶11 On January 28, 2002, DOR issued a notice to Shelby Distributors that its beer wholesaler and wine distributor license was to be revoked. The notice advised of the right to request a hearing on the matter before the revocation was final. Shelby Distributors objected to the proposed revocation and initiated a contested proceeding.

¶12 After notifying Shelby Distributors of the possible revocation of its beer wholesaler and wine distributor license, DOR learned of additional loans made by Northern Vending to liquor retailers during the discovery phase of the case.

¶13 A DOJ Hearing Examiner held an evidentiary hearing on the petition to revoke Shelby Distributors' license. On November 29, 2005, the Hearing Examiner entered findings of

5

fact, conclusions of law, and issued a proposed order to the effect that the loans made by Northern Vending to licensed liquor retailers caused violations of MABC because Williamson controlled both Northern Vending and Shelby Distributors. The Hearing Examiner found, *inter alia*, that DOJ and DOR are distinct, separate agencies, both in their duties and in the statutes and regulations they enforce. Thus, approval by the Gambling Control Division of DOJ of the loans Northern Vending made to liquor retailers did not mean that these loans had been approved by DOR. The Hearing Examiner found as a matter of fact Shelby Distributors had a prohibited indirect financial interest in the liquor retailers that had borrowed from Northern Vending because Williamson controlled both entities. Nevertheless, the Hearing Examiner concluded that revocation of Shelby Distributors' license was not required. Instead, the Hearing Examiner proposed an order that levied a $1,500 fine and required that Williamson divest himself of his interest in either Shelby Distributors or Northern Vending.

¶14 Shelby Distributors appealed the Hearing Examiner's proposed decision to the director of DOR. On May 5, 2006, DOR issued a final decision which adopted the Hearing Examiner's proposed findings of fact and conclusions of law and resulted in a final decision that Shelby Distributors pay a $1,500 fine and that Williamson divest himself of the common ownership of the two companies or that Northern Vending cease making loans to alcoholic beverage retailers. The final order also provided that if Northern Vending opted to cease making the prohibited loans, it would be required to make quarterly reports to DOR showing

6

that existing loans made by Northern Vending to liquor retailers are being repaid and no new loans are being created.

¶15 Shelby Distributors appealed the final agency decision to the District Court arguing that its due process rights had been violated and DOR had incorrectly interpreted the statutes. The District Court heard oral argument on March 1, 2007, and affirmed DOR's decision on May 1, 2007. Shelby Distributors now appeals the judgment of the District Court.

STANDARDS OF REVIEW

¶16 A district court reviews an agency's findings of fact to determine if they are clearly erroneous and an agency's conclusions of law to determine if they are correct. This Court applies the same standards when reviewing a district court's order regarding an administrative decision. *Ray v. Mont. Tech. of Univer. of Montana*, 2007 MT 21, ¶ 24, 335 Mont. 367, 152 P.3d 122. The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact unless they are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. A court may reverse or modify the agency decision if it is in violation of constitutional or statutory provisions. Section 2-4-704(2), MCA.

¶17 Both the Fourteenth Amendment of the United States Constitution and Article II, Section 17 of the Montana Constitution guarantee that no one shall be deprived of life, liberty, or property without due process of law. "Although the phrase 'due process' cannot be precisely defined, the phrase expresses the requirements of 'fundamental fairness.' " *In re A.F.-C.*, 2001 MT 283, ¶ 50, 307 Mont. 358, 37 P.3d 724 (citations omitted).

7

¶18 When this Court interprets a statute, its goal is to ascertain and give effect to the legislative intent. *Barnard v. Liberty Northwest Ins. Corp.*, 2008 MT 254, ¶ 17, 345 Mont. 81, 189 P.3d 1196; *Fliehler v. Uninsured Employers Fund*, 2002 MT 125, ¶ 13, 310 Mont. 99, 48 P.3d 746. We first attempt to construe a statute according to its plain meaning. If the language of the statute is unambiguous, no further interpretation is necessary. *Rausch v. State Compensation Ins. Fund*, 2002 MT 203, ¶ 33, 311 Mont. 210, 54 P.3d 25. We read all parts of a statute as a whole and strive to give effect to all of its provisions. Our task is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA; *Barnard*, ¶ 17; *Fliehler*, ¶ 13.

## DISCUSSION

¶19 *Issue 1: Did DOR violate Shelby Distributors' due process rights by imposing sanctions against it because of loans made by Northern Vending to liquor retailers when the loans had been approved by DOJ?*

¶20 Citing *Seaman v. State, Dept. of Revenue*, 2002 MT 34, 308 Mont. 307, 42 P.3d 790 (Cotter, J., concurring), for the proposition that it is a violation of due process if the State of Montana gives permission to do an act but proceeds to penalize that act, Shelby Distributors argues that DOR did not treat it in a fundamentally fair manner because the loans in question were approved by another department of the State of Montana, DOJ.

¶21 We first note that *Seaman* was decided on statutory grounds and the Court expressly noted that it did not reach the merits of the due process argument raised by the appellant.

8

*Seaman*, ¶ 24. Further, considering the thesis of the concurring opinion in *Seaman*, the facts of this case are substantially different. In *Seaman*, only DOR and Seaman were involved. *Seaman*, ¶ 5. In this case, there are two separate agencies, with separate duties, DOR and DOJ, on the government side of the equation. Pertinent to this case, each of these agencies has separate duties to enforce separate laws, enacted for different purposes. The dissents posit because "the State" approved the loans it is unfair to sanction Shelby Distributors for doing what "the State" said Northern Vending could do. However, this does not account for the distinctly different purposes of the separate agencies, and the separate laws they enforce. Approval by one agency of an act does not necessarily provide a blanket approval of that act by all agencies of the State.

¶22 DOR has, *inter alia*, the duty to enforce MABC, the liquor control laws. It is a part of Montana's policy, as expressed in the MABC, that liquor wholesalers may not have a financial interest, direct or indirect, in liquor retailers. Section 16-3-242, MCA. Shelby Distributors' beer wholesaler and wine distributor license is within the jurisdiction of DOR.

¶23 DOJ has, *inter alia*, the duty to enforce the statutes controlling gaming. Montana's policy is that financial arrangements entered into by gaming licensees must be reported and approved by DOJ in order to tightly control the flow of money in and out of gambling enterprises. Section 23-5-176(2)(c), MCA; Admin. R. Mont. § 23.16.103(3). Northern Vending's license is within the jurisdiction of DOJ.

¶24 On the private enterprise side of the equation, there are two separate private entities, Shelby Distributors and Northern Vending, each in a different business and each requiring

9

separate licenses. Shelby Distributors is required to have a license from DOR to conduct its business, and Northern Vending is required to have a license from DOJ to conduct its business.

¶25 The Hearing Examiner found, and we agree, that the Gambling Division of DOJ and the liquor control division of DOR are separate entities with separate functions. DOJ's approval of Northern Vending's loans to liquor retailers did not unfairly mislead Shelby Distributors and its majority stock holder, Williamson, into believing that Shelby Distributors was free from the constraints of §§ 16-3-242, 16-3-406, MCA. DOR knew that Williamson controlled Shelby Distributors. Once it learned that Williamson also controlled Northern Vending, DOR's decision to enforce the MABC was neither mean-spirited nor deceitful. Further, the sanction imposed, the major part of which was simply an order that the prohibited conduct must cease, does not amount to treatment that is so fundamentally unfair that it violates Shelby Distributors' due process rights.

¶26 *Issue 2: Did DOR and the District Court err in concluding that the loans made by Northern Vending to liquor retailers created prohibited indirect financial interests held by Shelby Distributors in retail liquor businesses?*

¶27 Section 16-3-242, MCA, provides:

No brewer, beer importer, or wholesaler shall advance or loan money to or furnish money for or pay for or on behalf of any retailer any license or tax which may be required to be paid for any retailer, and no brewer, beer importer, or wholesaler shall be financially interested, either directly or indirectly, in the conduct or operation of the business of a retailer. A brewer, beer importer, or wholesaler shall be deemed to have such a financial interest within the meaning of this section if:
(1) such brewer, beer importer, or wholesaler owns or holds any interest in or

10

a lien or mortgage against the retailer or his premises;
(2) such brewer, beer importer, or wholesaler is under any contract with a retailer concerning future purchases and/or sale of merchandise by one from or to the other;
(3) any retailer holds an interest, as a stockholder or otherwise, in the business of the wholesaler.

Section 16-3-406, MCA, employs nearly identical language regarding table wine distributors, with the exception of one subsection, § 16-3-406(2)(c), MCA, not at issue here.

¶28 Based on the principle *expressio unius est exclusio alterius* (the expression of one is the exclusion of others), Shelby Distributors argues that only the specific interests listed in subdivisions (1), (2), and (3) of § 16-3-242, and subdivision (2) of § 16-3-406, MCA, are prohibited. *See Dukes v. City of Missoula*, 2005 MT 196, ¶ 15, 328 Mont. 155, 119 P.3d 61. It claims that the only prohibited financial interests are those listed in §§ 16-3-242(2), 16-3-406(2) MCA, and all others are therefore allowed.

¶29 Considering the entirety of §§ 16-3-242(2), 16-3-406(2) MCA, the maxim *expressio unius est exclusio alterius* does not apply in this case. The phrases "any interest," "any contract," and "an interest, as a stockholder or otherwise" constitute broad language that encompasses, rather than excludes, the type of indirect financial interest at issue in this case.

¶30 Shelby Distributors also argues that the District Court and DOR read the term "financial interest" too broadly and it should be construed to refer only to an ownership interest.

¶31 Sections 16-3-242, 16-3-406, MCA, prohibit beer wholesalers and wine distributors from being "financially interested, either directly or indirectly" in an alcohol retailer. The

11

statutes do not define what constitutes an indirect financial interest, thus we look to the plain meaning of the words. "Indirect" in the present context refers to something that is "deviating from a direct line or course; not proceeding straight from one point to another; proceeding obliquely or circuitously." *Webster's Third New International Dictionary, Unabridged* 1151 (Philip Babcock Gove ed., Merriam-Webster 2002). A financial interest is "[a]n interest involving money or its equivalent." *Black's Law Dictionary* 829 (Brian A. Garner ed., 8th ed., West 2004).

¶32 It cannot be gainsaid that Northern Vending acquired a direct financial interest in the retail liquor businesses to which it loaned money. Northern Vending was interested in making sure that these businesses were successful so that they could repay the loans and it had a legal right to proceed against their assets if they did not. Williamson, as the owner of the controlling interest in Northern Vending, stands to make the most or lose the most from these loans and will naturally take such steps he deems reasonably necessary to make sure Northern Vending gets its money back.

¶33 Williamson is also the owner of the controlling interest in Shelby Distributors. He has an obvious interest in assuring that this business succeeds, and he will naturally take such steps he deems reasonably necessary to make sure it does. This common business interest and control over two companies controlled by Williamson constitutes just the type of circuitous, indirect financial interest that is prohibited by §§ 16-3-242, 16-3-406, MCA. If all that is required to circumvent the statute is formation of a legal entity to hold an otherwise prohibited financial interest, the legislature's prohibition of indirect interests is meaningless.

12

This Court construes a statute so as to give effect to all its provisions. *Barnard*, ¶ 17; *Fliehler*, ¶ 13; *Mont. Trout Unlimited v. Mont. DNRC*, 2006 MT 72, ¶ 23, 331 Mont. 483, 133 P.3d 224.

¶34 Williamson's common ownership and control of Northern Vending and Shelby Distributors, coupled with Northern Vending's loans to alcoholic beverage retailers, gave Shelby Distributors an impermissible indirect financial interest in the retailers.

¶35 The District Court did not err in affirming DOR's final decision.

¶36 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson, dissenting.

¶37 I respectfully dissent from the Court's decision.

¶38 Before making loans to alcohol retailers, Northern sought and received written approval from the DOJ. The DOJ, however, did not report its approval of these loans to the DOR. The DOR remained blissfully unaware of the loans that the DOJ had approved. Yet, pursuant to an MOU entered into between the DOR and the DOJ, the DOJ investigated Northern and then reported to the DOR the loans that the DOJ had previously approved. The

13

DOR was already aware that Williamson owned controlling interests in Shelby Distributors and Northern. But upon receiving the DOJ's report, the DOR first became aware of the loans that Northern had made and which had been previously approved by the DOJ. The DOR then determined to prosecute and sanction Shelby Distributors for loans which the DOJ had approved. Indeed, a DOJ hearing examiner heard the DOR's petition to revoke Shelby Distributor's license and determined that the loans which the DOJ had approved violated the DOR's regulations. The DOR director then approved the DOJ hearing examiner's decision. In short, DOR determined that Shelby Distributors was SOL because Northern went forward with an activity which DOJ had expressly approved. It doesn't take Ansel Adams to see that something is wrong with this picture.

¶39    I refuse to accept the proposition that executive agencies of this State, especially those administrating closely related activities—and what can be more closely related than the licensing and regulation of alcohol sales and gambling?—either cannot or will not investigate and share information so as to prevent the needless inconvenience to and penalization of Montana businesses and citizens exemplified by this case. While the DOJ and the DOR may be separate agencies, Opinion, ¶¶ 13, 21, 24-25, they are not separate sovereigns. They are both executive branch agencies that function as part of the same state government and enforce a common body of public laws and administrative regulations—and, in theory at least, serve the same business community and citizenry.

¶40    I cannot agree with our parsing of these laws and administrative regulations—these are DOR's, these are DOJ's, and never the two shall meet. Opinion, ¶¶ 21-23. In truth, these

14

laws and regulations are the State of Montana's, and it is fundamentally unfair that Montana businesses and citizens should suffer being investigated and penalized—with all of the attendant cost and expense—because the right hand of state government is intentionally ignorant about what the left hand of state government is doing.

¶41 The fact that there are two separate businesses requiring separate licenses, Opinion, ¶ 24, is beside the point. The licenses are issued by, and the licensees regulated by, the same sovereign power—the State of Montana. It cannot logically follow that because the State acts through its executive branch agencies, these agencies are permitted—much less, required—to be intentionally oblivious to each other's activities.

¶42 Justice Cotter was right when, in writing her concurrence in *Seaman v. State, Dept. of Revenue*, 2002 MT 34, 308 Mont. 307, 42 P.3d 790, she concluded that it is "at best mean-spirited and at worst deceitful" when the government (there the same agency, the DOR) gives with one hand while taking away with the other. *Seaman*, ¶ 30 (Cotter & Nelson, JJ., specially concurring). Indeed, as Justice Cotter demonstrates in her Dissent here, this sort of legerdemain results in a violation of the substantive due process rights of the businesses and citizens targeted.

¶43 Unfortunately, our decision here will simply encourage more of the same. I decline to support the perpetuation of this deliberate, interagency anopsia any further. I would reverse on Issue 1; I would decline to reach Issue 2.

¶44 Accordingly, I respectfully dissent.

/S/ JAMES C. NELSON

15

Justice Patricia O. Cotter dissents.

¶45 The Court appears to premise its due process decision on two bases: (1) DOR's decision to enforce the MABC was "neither mean-spirited nor deceitful"; and (2) the sanction imposed upon Shelby Distributors was not so "fundamentally unfair . . . that it violates Shelby Distributors' due process rights." Opinion, ¶ 25. The rationale, in other words, is that fining Shelby for past lawful conduct is not quite bad enough to merit reversal—a low bar by any measure. I dissent from this offhand approach for the reasons set forth in Justice Nelson's dissent and those set forth below.

¶46 As we stated in *Small v. McRae*, 200 Mont. 497, 651 P.2d 982 (1982), "due process is not a fixed concept but, rather, is one which must be tailored to each situation in such a way that it meets the needs and protects the interests of the various parties involved." *Small*, 200 Mont. at 507, 651 P.2d at 988. Moreover, "[a] determination of whether the procedures followed in any given case [are] constitutionally sufficient requires an analysis of the governmental and private interests that are affected by the action taken." *Small*, 200 Mont. at 506, 651 P.2d at 988. In addition to containing a "procedural" aspect, the " 'due process clause [also] contains a substantive component which bars arbitrary governmental actions regardless of the procedures used to implement them . . . .' " *Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 28, 302 Mont. 518, 15 P.3d 877 (quoting *Newville v. State, Dept. of Family Servs.*, 267 Mont. 237, 249, 883 P.2d 793, 800 (1994)). Thus, under the due

16

process clause, "the State cannot use its power to take unreasonable, arbitrary or capricious action against an individual . . . ." *Powell*, ¶ 29.

¶47     As the Court notes, "the phrase 'due process' . . . expresses the requirements of 'fundamental fairness.' "  Opinion, ¶ 17 (quoting *In re A.F.-C.*, ¶ 50).  This means the procedures used by the State must be "fair." *In re A.F.-C.*, ¶ 50.  So, the fulcrum of the due process analysis should not be whether DOR's decision was mean-spirited; it should be whether it is fundamentally fair for the State to approve Shelby's loans and then penalize Shelby for relying on that approval.  It would be one thing if DOR's decision had been purely prospective, advising Shelby it could no longer make loans to alcohol retailers in the future.  However, since the State already approved past loans, it is simply not "fundamentally fair" for the State to impose sanctions on Shelby because it did what the State said it could do.  "[R]egardless of the procedures used to implement" such governmental action, *Powell*, ¶ 28, affirming a sanction here is just plain capricious and wrong.

¶48     Just as the prohibition on ex post facto laws prevents the government from retroactively criminalizing conduct which was lawful when it was performed, *See State v. Young*, 2007 MT 323, ¶ 58, 340 Mont. 153, 174 P.3d 460 (Cotter, J., dissenting), due process and "fundamental fairness" should prohibit the State from explicitly approving a course of action only to turn around and penalize it—regardless of the extent to which the duties and functions of DOJ and DOR are separate.  *See* Opinion, ¶¶ 21-25.  The loans previously approved by DOJ which Shelby had already consummated are a done deal; as between the

17

two, it should be the State, not the citizen, which bears the consequence of the conflicting actions of the State's own agents.

¶49  I would reverse the imposition of sanctions against Shelby Distributors. I dissent from the Court's failure to do so.

/S/ PATRICIA COTTER