DA 08-0654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 294

POWELL COUNTY, a political subdivision
of the State of Montana,

        Petitioner and Appellee,

  v.

COUNTRY VILLAGE, LLC d/b/a
HAPPY ENDINGS CASINO,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                In and For the County of Powell, Cause No. DV 08-66
                Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade J. Dahood, Michelle Sievers; Knight, Dahood, Everett &
            Sievers, Anaconda, Montana

        For Appellee:

            Lewis K.  Smith; Powell County Attorney, Deer Lodge, Montana

                          Submitted on Briefs:  July 22, 2009

                                  Decided:  September 2, 2009

Filed:

            _____
                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Country Village, LLC, dba Happy Endings Casino (Happy Endings) appeals from orders of the Third Judicial District Court, Powell County, granting Powell County's (County) petition for a restraining order and denying Happy Endings' motion to alter or amend judgment or for a new trial. We affirm.

¶2     We restate the issues on appeal as follows:

¶3     Whether the Powell County Planning Board had jurisdiction to require Happy Endings to apply for a conditional use permit.

¶4     Whether the erection of 50 artificial lighted palm trees constituted a change in use under the Powell County Zoning and Development Regulations.

¶5     Whether Powell County's enforcement of the Powell County Zoning and Development Regulations substantially complies with its Growth Policy.

## BACKGROUND

¶6     This land-use case concerns lighted, artificial palm trees at the Happy Endings Casino in Deer Lodge. Happy Endings purchased Country Village, a gambling casino, convenience store, gas station, and restaurant, in the business district of Deer Lodge along I-90. Happy Endings remodeled the interior and expanded the casino by adding six gambling machines to the existing 14 machines. At the direction of the Powell County Planning Department (Planning Department), on August 15, 2007, Happy Endings submitted an application for a conditional use permit (CUP) seeking approval for four logo signs, including an LCD display sign, and 50 lighted palm trees. Happy Endings'

2

owner Jon Dehler describes the palm trees as a "unique advertising motif" associated with his other Montana casinos. After reviewing the CUP application, the Planning Department recommended that the Powell County Planning Board (Planning Board) approve the gambling casino and three logo signs, but deny the 50 lighted palm trees and LCD sign. The Planning Board adopted those recommendations at a public hearing on September 6, 2007.

¶7 Happy Endings did not appeal the decision by the Planning Board, "because HAPPY ENDINGS felt that the Planning Department and Planning Board did not have jurisdiction over the geographical area in which HAPPY ENDINGS was located." In May 2008, Happy Endings erected 25 palm trees on the property in direct violation of the Planning Board's decision. Powell County filed a petition for a restraining order seeking to prohibit Happy Endings from erecting additional palm trees and to remove existing ones from its property. The District Court held a hearing on the County's petition on June 27, 2008, and issued the restraining order on October 17, 2008. Happy Endings filed a motion to alter or amend the judgment or for a new trial, which was denied by the District Court on December 5, 2008. Happy Endings appeals from that order.

**STANDARD OF REVIEW**

¶8 Section 76-2-227, MCA, authorizes a reviewing court to hold a hearing and reverse, affirm, or modify a zoning decision made by a board of adjustment or any officer, department, board, or bureau of the county. Montana district courts review a zoning authority's decision for abuse of discretion. *Town & Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 13, 349 Mont. 453, 203 P.3d 1283; *Flathead Citizens for*

3

*Quality Growth, Inc. v. Flathead Co. Bd. of Adjustment*, 2008 MT 1, ¶ 32, 341 Mont. 1, 175 P.3d 282. A zoning authority abuses its discretion when the information upon which the authority based its decision is "so lacking in fact and foundation that it is clearly unreasonable." *Town & Country*, ¶ 13, *Flathead Citizens*, ¶ 32. The courts give deference to the decisions of the local board. *Town & Country*, ¶ 14. We review a district court's conclusions of law to determine if they were correct. *Clark Fork Coalition v. Mont. Dept. of Envtl. Quality*, 2008 MT 407, ¶ 19, 347 Mont. 197, 197 P.3d 482. An agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is plainly inconsistent with the spirit of the rule. *Clark Fork Coalition*, ¶ 20.

## DISCUSSION

¶9     This appeal arrives at this Court as a result of Happy Endings' failure to avail itself of proper legal remedies in a timely manner. Happy Endings did not appeal the Planning Board's decision to the Board of Adjustment as provided for by § 76-2-226, MCA, after which further appeal to a court of record would be appropriate under § 76-2-227, MCA. Instead Happy Endings ignored the decision of the Planning Board by erecting 25 artificial palm trees on its property. Consequently, this appeal arises from Powell County's efforts to enforce a decision ignored by Happy Endings, and this Court's review is thus narrowly defined.

¶10     *Whether the Powell County Planning Board had jurisdiction to require Happy Endings to apply for a conditional use permit.*

4

¶11    Happy Endings argues that the Planning Board had no jurisdiction to require it to apply for a CUP.  Happy Endings is located in a planning area "donut" encircling Deer Lodge, but outside of the city limits.  Prior to 2006, pursuant to an inter-local agreement between the City of Deer Lodge and Powell County, the "donut" was jointly managed by the City and County.  At the time, the Powell County Zoning and Development Regulations (Zoning Regulations) and Growth Policy excluded the "donut" from the County's planning jurisdiction.  However, the City and County terminated the inter-local agreement on September 28, 2006, and the Powell County Commissioners amended the Zoning Regulations to create District 5 for the planning area "donut."

¶12    Thereafter, all areas outside of the City were administered by the Powell County Planning Board.    Chapter I, section I-E of the Zoning Regulations provides: "**Jurisdiction** — The area included within the jurisdiction of these regulations shall be all of the unincorporated area of Powell County, Montana, except that area located within the jurisdiction of the Deer Lodge City-Powell County Planning Board."

¶13    Regarding conditional use permits, chapter III, section III-B provides, in pertinent part:

> **Conditional Use Permit (CUP)** — . . . a CUP must be obtained from the Planning Board before any person may begin to construct, place, move or significantly expand approved uses indentified in each Zoning District.
>
> Uses for which a CUP is required include new and sometimes expansion of residential, commercial, industrial, institutional, recreational or public uses. . . .
>
> A CUP may be issued only when the proposed building, structure, parcel or use are consistent with the general and specific purposes stated in Chapter I of these regulations, will meet the conditions specified in Chapter V and

5

will meet the requirements specified in chapters VI, VII and VIII of these regulations.

Chapter VI of the Zoning Regulations provides for certain specific requirements of individual districts. That chapter provides: "**SPECIFIC DISTRICT REQUIRE-MENTS FOR DEVELOPMENT CERTIFICATE OR CONDITIONAL USE PERMIT APPROVAL**." Section VI-F-3 of the Zoning Regulations "reserved" specific standards for the District 5 "donut":

> **Specific Standards** — In addition to the requirements of Chapter V, Chapter VII, and Chapter VIII, the following specific standards apply:
>
> a. Permitted Land Uses (No Development Certificate required)
>
> (Reserved)
>
> b. Permitted Land Uses (Development Certificate required)
>
> (Reserved)
>
> c. Conditional Land Uses (Conditional Use Permit required)
>
> (Reserved)

¶14    Happy Endings argues that "reserved" means that general standards applicable to the County do not apply to District 5, because specific standards for the area were reserved to be addressed in the future. The County counters that "reserved" means that the Zoning Regulation's general standards would be incorporated into the provisions applicable to District 5. We concur with the District Court's reasoning:

> The Regulations, however, particularly Section VI thereof, treat District No. 5 in the same manner as Districts No. 1 through 4. Section VI does not specifically incorporate the requirements of Chapter III and Chapter IV of the Regulations for any of the Districts. The Regulations must be read together and in so doing, it is apparent that the Powell County Commission

6

intended to treat District No. 5 in the same manner as Districts No. 1 through 4 as they pertain to the procedural and substantive requirements for Conditional Use Permits although the Commission reserved establishing more specific requirements for Conditional Use Permits for District No. 5 to a later date.

¶15   The fact that specific standards for District 5 were "reserved" in the Zoning Regulations does not nullify the applicability of general county-wide standards to District 5. The Zoning Regulations clearly provide jurisdiction over "all of the unincorporated area of Powell County." Section I-E. Happy Endings is located within an unincorporated area of the County. Further, as noted in the Zoning Regulations, "[a] CUP may be issued only . . . with the general and specific purposes stated in Chapter I of these regulations. . . ." Section III-B. All of the general regulations quoted above apply to Happy Endings. Statutes and regulations must be interpreted in accordance with the plain language of the provision. *Shelby Distributors, LLC. v. Mont. Dept. of Revenue*, 2009 MT 80, ¶ 18, 349 Mont. 489, 206 P.3d 899; *Barnard v. Liberty Northwest Ins. Corp.*, 2008 MT 254, ¶ 17, 345 Mont. 81, 189 P.3d 1196. In addition, when possible all provisions of a statute or regulation must be read together to give meaning to all. *State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, ___ P.3d ___. "When possible, we interpret statutes to give effect to the Legislature's intent. We will also read and construe the statute as a whole to avoid an absurd result and to give effect to a statute's purpose." *Brendal*, ¶ 18. Clearly reading the Zoning Regulations as a whole, the provisions in Chapter VI regarding specific standards that were reserved do not abrogate the general standards that provide county planning jurisdiction in this matter.

7

¶16    Moreover, the Planning Department's interpretation of its regulations is not inconsistent with the spirit of the rule, and therefore we defer to that interpretation. *Clark Fork Coalition*, ¶ 20. An agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is plainly inconsistent with the spirit of the rule. *Clark Fork Coalition*, ¶ 20. Ron Hansen (Hansen), Director of the Planning Department, testified that the County intended to bring District 5 under the County's Zoning Regulations. The District Court heard testimony, reviewed evidence, and found that the Planning Board had jurisdiction to require and hear the CUP application for Happy Endings. The District Court decision was based upon substantial credible evidence.

¶17    Happy Endings further argues that the District Court erroneously applied an abuse of discretion standard to determine whether the Planning Board had jurisdiction. Happy Endings notes that the existence of jurisdiction is a question of law that is reviewed for correctness. However, this matter was presented to the court through the County's amended petition for a restraining order. The County argues that the District Court correctly applied an abuse of discretion standard to the *decision* of the Planning Board. We agree. As the District Court reasoned:

> Had Respondent sought its remedy according to law rather than proceeding in contravention of it, the Court would be limited to a determination of whether the Board of Adjustment's decision constituted an abuse of discretion. Certainly, the decision of the Planning Board cannot be subjected to stricter scrutiny by Respondent's failing or refusing to follow the law.

8

We conclude that the District Court correctly determined that the Planning Board had jurisdiction.

¶18 *Whether the erection of 50 artificial lighted palm trees constituted a change in use under the Powell County Zoning and Development Regulations.*

¶19 Happy Endings argues that even if the standard CUP sections applied to District 5, no CUP application was required because Happy Endings did not change the use of the Country Village business nor significantly expand that use. Happy Endings notes that the exterior dimensions of the business did not change, and only six gaming machines were added. However, Hansen testified that the proposal presented to him by Happy Endings in the summer of 2007 was for the elimination of the convenience store and significant expansion of the casino that constituted a change of use requiring a CUP. Based on this evidence, the District Court found that there was a significant change in use to warrant the need for a CUP. Courts review a zoning board's decision for abuse of discretion, and we concur with the District Court that the Planning Board's partial denial of Happy Endings' CUP application was reasonable in light of the proposed changes described.

¶20 Happy Endings further argues that signs are not considered a use, building or structure in the Zoning Regulations, thus the erection of palm trees did not constitute a change in use. The Zoning Regulations only regulate signs after a CUP application has been made. The District Court's determination that a CUP was required was based on the change in use from primarily a convenience store to a gambling casino, not on the erection of the lighted palm trees. Section IV-E-2 of the Zoning Regulations provides:

**Conditional uses** must comply with the requirements of chapters VI, VII and VIII and any additional conditions prescribed by the Planning Board relating to the following:

.   .   .

h. Signs, with attention to preventing glare from lighting, promoting traffic safety and maintaining harmony with adjacent properties by limiting scale, height and size of the signs.

Zoning Regulation § IV-E-2 permits the Planning Board to review signage for conformity with surrounding property use when a change in use is contemplated.

¶21 *Whether Powell County's enforcement of the Powell County Zoning and Development Regulations substantially complies with its Growth Policy.*

¶22 Happy Endings argues that Powell County's enforcement of its Zoning Regulations unreasonably promotes a nonexistent western/historical theme and the private interests of the Grant-Kohrs Ranch. Happy Endings contends that during the hearing, Powell County presented documents from employees of the Grant-Kohrs Ranch alleging that the palm trees would be bad for the Ranch. Happy Endings notes that the Ranch is several miles away from the business district where Happy Endings is located. Happy Endings raises various private property arguments (i.e. unconstitutional application of police power depriving private property rights) and contends it was unreasonable for Powell County to deprive Happy Endings from effectively advertising its business in order to promote a nonexistent western/historical theme. A Happy Endings' manager testified regarding the "overwhelming support" from the local business owners in the Deer Lodge community, who believe the palm trees are "a positive,

colorful influence that has attracted customers into the community and has increased business."

¶23 Powell County responds that its Growth Policy, adopted after considerable public comment, promotes a western historic theme consistent with the agricultural nature of the County. Section IV-E-2 of the Zoning Regulations requires conditional uses to maintain: "j. General compatibility with the Powell County Growth Policy." Hansen testified that the lighted palm trees would not be compatible under the Growth Policy with the preservation of the rural character of the community. Additionally, the LCD signs located close to the freeway were considered a public safety concern with their bright lights potentially creating a traffic hazard or distraction.

¶24 Montana law authorizes a county that has adopted a growth policy, pursuant to Title 76, Chapter 1, to enact zoning regulations to promote "public health, safety, morals, and general welfare." Section 76-2-201, MCA. In counties where a planning board has been created, "the preeminent planning tool is the comprehensive jurisdiction-wide development plan, which is today known as a growth policy. A growth policy essentially surveys land use as it exists and makes recommendations for future planning." *North 93 Neighbors v. Bd. of Co. Commrs. of Flathead Co.*, 2006 MT 132, ¶ 21, 332 Mont. 327, 137 P.3d 557. Section 76-1-605, MCA, provides that a governing body "must be guided by and give consideration to" its growth policy. A Planning Board must "substantially comply with its Growth Policy." *Neighbors*, ¶ 23.

¶25 The Powell County Growth Policy's focus on maintenance of open spaces and historic heritage reasonably promotes the general welfare of the community. Happy

11

Endings' private property rights were not infringed when the Planning Board denied portions of the CUP requesting to erect artificial palm trees on the property. While Happy Endings may still advertise its business in various manners, Happy Endings has no vested right to erect artificial palm trees on its property without approval from the County. We cannot conclude that the County abused its discretion by denying portions of Happy Endings' CUP application that were inconsistent with its Growth Policy. On the contrary, by enforcing its Zoning Regulations the County substantially complied with its Growth Policy.

¶26    Affirmed.


                                    /S/ MIKE McGRATH

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE